**Thomas J. EAGER, Respondent,**

v.

**SIWEK LUMBER & MILLWORK, INC., et al., Appellants.**

**Nos. C6–86–193, C3–86–796.**

Court of Appeals of Minnesota.

Sept. 2, 1986.

Review Denied Oct. 22, 1986.

---

Sherman Bergstein, Minneapolis, for respondent.

John G. Gisselquist, New Brighton, for appellants.

Heard, considered and decided by FOLEY, P.J., and HUSPENI and CRIPPEN, JJ.

## OPINION

FOLEY, Judge.

Following judgment for Thomas J. Eager in the amount of $25,760.67 for breach of warranties, Siwek Lumber & Millwork, Inc. moved for a new trial and/or amended findings. Eager counter-moved for attorney's fees under the Consumer Fraud Act, Minn.Stat. § 325F.69 (1984), and for pre-judgment and post-judgment interest. The trial court denied Siwek's motions for a new trial and/or amended findings but granted Eager's motions awarding attorney's fees and interest on the judgment in its order of January 2, 1986. Siwek Lumber appeals from that order (C6-86-193) raising the issues addressed here.

Subsequently, the trial court entered an amended judgment according to its order

of January 2, as modified by its order of January 30, fixing the attorney's fees. Siwek Lumber brought a separate appeal from the amended judgment (C3–86–796) again challenging the award of attorney's fees and now also challenging the award of pre-judgment interest. By order of this court, the two appeals have been consolidated. We affirm.

## FACTS

After contracting to tear down and build a new garage for Anna Jermsta, Thomas J. Eager, a Minneapolis contractor, and Jermsta purchased a garage kit from Siwek Lumber for $2,337.17. The purchase was made after Joseph Siwek, president of Siwek Lumber, expressly and impliedly warranted to Eager that the materials and supplies in the kit conformed to the Minneapolis Building Code.

Eager subsequently tore down Jermsta's existing garage and had begun constructing the new garage from the kit when a Minneapolis building inspector halted construction because the materials did not conform to the building code. Eager immediately notified Joseph Siwek and sought replacement or supplement of the materials which did not meet the building code or a refund of his money for the entire kit. Siwek admitted that he refused this as well as Eager's subsequent demands.

At trial, Siwek noted that he did send an invoice to the building inspector indicating that the framing lumber (two-by-fours) shipped from its supplier was of the required grade. Siwek admitted that this invoice did not state the grade of the unstamped two-by-sixes supplied in the kit for construction of rafters or the plywood. The building code required that these materials also have mill grade stamps. No cure was offered for other materials in the kit which were inadequate in quantity or quality to construct the garage according to the building code.

Eager was unable to continue construction of the garage because Siwek refused to replace or supplement the inadequate materials in the kit or to refund his money.

Eager also testified that he lacked the funds to purchase replacement parts. Jermsta subsequently collected $2,086 on Eager's construction bond for his default and the city revoked Eager's contractor's license, thus preventing him from engaging in further construction projects. Eager then commenced this suit.

Following trial, the court found that Eager had revoked his acceptance of the nonconforming goods within a reasonable time after discovery of the nonconformity. The court also found that Eager accepted the goods without knowledge that they failed to conform to local building codes and that his immediate notification of Siwek Lumber after learning of the nonconformance constituted a timely revocation of acceptance of the goods. The court further found that nonconformity of the kit to local building codes substantially impaired the value of the kit to Eager, that this impairment involved the basis of the bargain and that Eager did not discover the impairment because he had relied on Siwek's assurances and warranties. In addition, the trial court found that this revocation occurred before any substantial change in the goods since Eager stopped construction immediately after the building inspector told him the materials did not conform with the city's building code. The only change in goods was that Eager had begun to assemble the materials.

Eager was awarded total damages of $25,760.67 for Siwek's breach of express and implied warranties, consisting of the following:

a) the price of the "kit", $2,337.17;

b) lost profits in the amount of $450.00 for lost payment for the labor of removal of the pre-existing structure;

c) loss of a contractor's bond which obligated the [respondent] to reimburse his carrier of the bond in the amount of $2,086.00;

d) lost profits in the amount of $887.50 for the anticipated profit from construction of the garage;

e) lost profits and opportunities from the loss of the plaintiff's bond in the amount of $20,000.00.

Eager had also moved for attorney's fees. This claim was rejected in the original judgment because the court found that no contract or statute permitted such recovery.

Siwek moved for a new trial or an order amending the findings and judgment. Eager counter-moved for pre-judgment and post-judgment interest and attorney's fees under Minn.Stat. § 8.31, subd. 3a (1984), which authorizes the recovery of attorney's fees for violations of the Consumer Fraud Act, Minn.Stat. § 325F.69 (1984). The court found that Siwek's misrepresentation to Eager constituted a violation of this Act and that Siwek's conduct was "egregious." Therefore, attorney's fees were awarded in a January 2, 1986 order denying Siwek's motions. This order also awarded Eager pre-judgment and post-judgment interest and required Eager to submit an affidavit regarding reasonable attorney's fees. Following submission of affidavits by both parties on reasonable attorney's fees, the court awarded Egan $3,750 in attorney's fees in its January 30 order.

Siwek Lumber appeals from the January 2, 1986 order and subsequently from the April 9, 1986 amended judgment which incorporated the orders of January 2 and 30.

## ISSUES

1. What is reviewable here?
a. on appeal from an order denying a motion for a new trial?
b. on appeal from an amended judgment?

2. Did the trial court err in awarding consequential damages?

3. Did the trial court err in awarding attorney's fees under Minn.Stat. §§ 8.31, subd. 3a and 325F.69 (1984)?

## ANALYSIS

1. *Appealability.*

■ A. *Order Denying New Trial.* Although appellants assert four issues in their appeal from the January 2, 1986 court order denying them a new trial, their appeal must be limited to those issues specifically addressed to the trial court:

> It is imperative that the request for [a] new trial and the Rule 59.01 basis therefor * * * be stated explicitly and with specificity.

*Swartwoudt v. Swartwoudt,* 349 N.W.2d 600, 602 (Minn.Ct.App.1984). Although the trial court addressed a number of claims specifically raised in appellants' motion and memorandum, the only issue asserted again on appeal is appellants' challenge to the award of consequential damages. The appeal from the order denying a new trial is therefore limited to this issue. *See Morton v. Board of Commissioners of Ramsey County,* 301 Minn. 415, 223 N.W.2d 764 (1974) (an appellate court will not review those issues raised for the first time on appeal).

■ B. *Amended judgment.* An appeal from an amended judgment is not reviewable if the issue remained undisturbed from the original judgment. *See Swartwoudt,* 349 N.W.2d at 602. Here, the amended judgment did vary from the original judgment; it reversed the court's decision on attorney's fees and awarded pre-judgment interest. In *E.C.I. Corp. v. G.G.C. Co.,* 306 Minn. 433, 435, 237 N.W.2d 627, 629 (1976), the supreme court noted: "[T]he time to appeal an issue begins to run anew *from a modification of judgment* when the issue was for some reason not appealable before the modification." Appellant's separate appeal from the amended judgment to consider the court's modified decision on attorney's fees and pre-judgment interest is reviewable.

2. *Consequential Damages.*

■ Appellants assert that respondent could have mitigated his damages by obtaining "cover," purchasing replacement materials for the defective materials in the garage kit. Appellants argue that under the rule of *Bemidji Sales Barn, Inc. v. Chatfield,* 312 Minn. 11, 250 N.W.2d 185 (1977), respondent's failure to mitigate his

damages bars him from recovering consequential damages.

The facts in *Bemidji Sales* differ greatly from the instant case. The seller in *Bemidji Sales* met its burden of showing that the buyer acted unreasonably and thus exacerbated his consequential damages. Here, the trial court applied the rule from *Bemidji Sales* and found that appellants failed to meet their burden of showing that respondent acted unreasonably to prevent his own loss.

> The [respondent] promptly started construction of the garage but was immediately *required to stop* by the Minneapolis Building Inspector. [Respondent] *immediately* contacted [appellants] asking either that the materials be replaced and supplemented or that the [appellants] take back the goods and refund the money paid. [Appellants] made no refund nor did they replace or supplement the materials. [Appellants'] conduct in this case was egregious. As a result of the [appellants'] misrepresentations and failure to cure, the [respondent] lost his contractor's license and was unable to work. It is the [appellants] who failed to mitigate the [respondent's] damages in this case. The [appellants'] argument that the [respondent] failed to mitigate damages is totally unsupported by the evidence at trial. The burden of proof rests with the seller to establish that the buyer acted unreasonably to prevent his own loss and the seller did not meet that burden here. *Bemidji Sales Barn, Inc. v. Chatfield*, 312 Minn. 11, 250 N.W.2d 185 (1977). (Emphasis in original.)

The record supports the trial court's findings and its conclusion that the respondent acted reasonably and the appellants acted unreasonably in averting respondent's damages.

### 3. *Attorney's Fees.*

■ The trial court denied respondent attorney's fees in the original judgment noting that such fees are recoverable only where "there is a specific contract permit-ting such recovery or such fees are authorized by statute." *Fownes v. Hubbard Broadcasting, Inc.*, 310 Minn. 540, 544, 246 N.W.2d 700, 702 (1976) (quoting *Dworsky v. Vermes Credit Jewelry, Inc.*, 244 Minn. 62, 69, 69 N.W.2d 118, 124 (1955)). In respondent's counter-motion to a new trial, he asserted that such fees were recoverable here under Minn.Stat. §§ 8.31, subd. 3(a) and 325F.69, and under *Yost v. Millhouse*, 373 N.W.2d 826 (Minn.Ct.App.1985). On this basis, the trial court reversed its earlier decision and awarded reasonable attorney's fees following submission of an affidavit by respondent's counsel. This award was incorporated in the amended judgment. The trial court did not err in granting this motion. *See Yost*, 373 N.W.2d at 831–32; *Liess v. Lindemyer*, 354 N.W.2d 556 (Minn.Ct.App.1984) (award of fees under the Consumer Fraud Act upheld).

■ Although appellants also challenge the award of pre-judgment interest, respondent clearly comes within the standards for such an award. *See* Minn.Stat. § 549.09, subd. 1 (1984).

### DECISION

We affirm the trial court's order of January 2, 1985 and the amended judgment of April 9, 1986.

Affirmed.