859 F.2d 1218
 ROBIN TOWING CORPORATION, Plaintiff-Appellant,
and
Federal Insurance Co. and Chubb Group of Insurance
Companies, Intervenors-Appellants,
v.
HONEYWELL, INC. d/b/a Honeywell Protection Services,
Defendant-Appellee.
Vincent J. ROBIN, III, Plaintiff-Appellant,
and
Federal Insurance Co. and Chubb Group of Insurance
Companies, Intervenors-Appellants,
v.
HONEYWELL, INC., d/b/a Honeywell Protection Services,
Defendant-Appellee.
 No. 87-3487.
 United States Court of Appeals,
Fifth Circuit.
 Nov. 14, 1988.
 
 Randolph J. Waits, Charles N. Branton, Emmett, Cobb, Waits & Kessenich, New Orleans, La., for plaintiff-appellant.
 Robert S. Reich, Kevin J. LaVie, New Orleans, La., for intervenors-appellants.
 Paul V. Cassisa, Sr., Carl J. Giffin, Jr., Bernard, Cassisa, Saporito, & Elliot, Metaire, La., for defendant-appellee.
 Appeals from the United States District Court for the Eastern District of Louisiana.
 Before WISDOM, GEE and RUBIN, Circuit Judges.
 ALVIN B. RUBIN, Circuit Judge:
 
 
 1
 The owner of a house entered into contracts for the installation of a home security system, which included fire alarm devices. The contracts contained clauses limiting the liability and the warranties of the seller. After the house had been destroyed by fire, the owner sued for alleged defects in the installation, operation, and maintenance of the system. Because the non-liability and no-warranty clauses are enforceable in Louisiana, the district court properly rendered summary judgment dismissing claims arising under the contracts. The complaint, however, also asserts claims for negligence in providing services not covered by the contracts and we reverse the summary judgment insofar as it dismissed those claims.
 
 I.
 
 2
 Vincent J. Robin, III lived in a residence owned by the Robin Towing Corporation at 519 Iona Street, Metairie, Louisiana. On November 20, 1981, Robin signed a printed form prepared and supplied by Honeywell, Inc., d/b/a Honeywell Protection Services, indicating that this was a contract for a "direct sale," "leased system," and "monitoring" relating to a home security, burglary, and fire alarm system at his residence. On April 29, 1982, Robin, appearing as the representative of Robin Towing Corporation, and Honeywell signed a Honeywell form captioned "Home Alarm Agreement" providing for the "direct sale" of a new alarm system for the sum of $5,575. Then, on June 10, 1982, Robin, without indicating that he was acting for the corporation, and Honeywell entered into a lease agreement for an addition to the alarm system known as a "Digital Monitor" using the same printed form. The April agreement provided that Honeywell would install and monitor a security system, one function of which was to provide fire protection by transmitting a warning signal to the Parish Fire Department and by sounding an alarm whenever a fire occurred on the premises.
 
 
 3
 A fire occurred in the residence on July 11, 1983. Robin asserts that neither part of the fire warning system worked and, as a result, the residence and his personal belongings were seriously damaged. Invoking diversity jurisdiction, he seeks to recover the damages he suffered from Honeywell and its insurer, Hartford Accident and Indemnity Company, alleging that they were caused by the gross negligence of Honeywell's employees in installing the system, Honeywell's blatant disregard of its obligations in failing properly to train Honeywell's employees, the gross negligence of Honeywell's employees in refusing to properly repair or replace the alarm system after numerous visits, and various other grossly negligent acts connected with installation and monitoring of the system. Robin Towing filed a similar complaint seeking damages for destruction of the house. The two cases were then properly consolidated.
 
 
 4
 Each of the three forms contained identical paragraphs captioned "Limits of Contractor's Liability" and "No Warranty," the full text of which is set forth in the footnote.[1] The "Limits-of-Liability" paragraph should instead be captioned "No Liability" for it first states "that [Honeywell] is not responsible for personal injury or other losses which are alleged to be caused by improper operation of the system, whether due to defects in the system or acts or omissions of [Honeywell] in receiving and responding to alarm signals." It continues, "If, notwithstanding the above agreements, there should arise any liability on the part of [Honeywell], such liability shall be limited to" $250. The no-warranty paragraph negates any warranty "including any implied warrant of merchantability or fitness."
 
 
 5
 Invoking these clauses, Honeywell sought summary judgment. The district court upheld the validity of the no-liability clause as applied to damages caused by negligence but held that the clause is invalid as to conduct that reaches the level of willful or wanton disregard of the contractor's duties. While Robin had adduced evidence that the system had required repair or servicing a number of times, the court held that this was not sufficient to show the egregious conduct required to escape the clause. The court found that Robin's charges of fraud similarly lacked evidentiary support. It rejected Robin's contention that the clause was invalid because it was not brought to his attention and his effort to have the contracts set aside as adhesive. Robin also contended that the provision violated the Magnuson-Moss Act,[2] and the court held that this argument had not been properly raised, but indicated that it likely lacked merit. Accordingly, the court dismissed both suits.
 
 II.
 
 6
 The district court held, properly, the parties agree, that Louisiana courts enforce no-liability clauses of the type set forth in the contracts against claims based on negligence,[3] but hold them violative of public policy when invoked against liability for willful acts or gross negligence,[4] that amorphous quantitative concept that Baron Rolfe once characterized as negligence heightened by "a vituperative epithet."[5] Implying greater vituperation and attempting less imprecision, Louisiana courts have defined the term as "willful or deliberate disregard of [a] contractual duty"[6] in cases involving alarm systems installed by Honeywell itself as well as another security system provider.
 
 
 7
 The district court ruled on the motion for summary judgment before Honeywell's officials had been deposed. These depositions had been postponed with the consent of all parties and were scheduled, but had not been taken, when the district court ruled.
 
 
 8
 Robin's fire insurance carrier, an intervenor, suggests that the district court should have awaited these depositions. Neither Robin nor the intervenor, however, sought additional time, as they might have, under Fed.R.Civ.P. 56(f), and neither raised this as a basis for opposing the summary judgment motion. Indeed, the insurer did not even oppose the motion for summary judgment. The parties had ample time for discovery and postponed these depositions knowing that the hearing on the summary judgment motion would be held before the depositions were scheduled to be taken. Moreover, there is no indication that any of the testimony would have been relevant to the issues raised. We therefore find no error in the court's failure to wait.
 
 
 9
 Since Robin bears the burden of proving that Honeywell was guilty of egregious fault, the issue raised by the motion for summary judgment, made after adequate opportunity for discovery, is whether Robin had adduced any evidentiary material that might, if fully credited by the trier of fact, create an issue sufficient to warrant a judgment on this issue in his favor.[7]
 
 
 10
 The sole evidence relied upon by Robin to carry its evidentiary load is that the system required innumerable maintenance services. In the year before the fire, these were so severe that a Honeywell repairman suggested installation of a new control panel, which Honeywell never provided. The district court properly held this insufficient to establish gross negligence in performing the obligations imposed by any of the contracts. As applied to the sale, installation, and monitoring of the system, which was all that the contracts covered, this evidence would have established at most negligence in the installation of the system, which, as a Louisiana Court of Appeal found in Haspel v. Rollins Protective Service was not sufficient to warrant submission to a jury of the question whether there was the requisite "willful or deliberate" breach of duty.[8] Robin provides no evidence that Honeywell "failed to respond to an emergency in spite of a clear and obvious need to react"[9] for it is undisputed that Honeywell's monitoring center received no alarm indicating an emergency.
 
 
 11
 The district court therefore did not reach the alternative maximum-liability clause, and properly rendered summary judgment on all of the claims for breach of any of the contracts.
 
 III.
 
 12
 In neither the original nor the amended complaint did Robin plead fraud in the inception of the contract or invoke the Magnuson-Moss Act. When Honeywell invoked the contractual clauses as bases for its motion for summary judgment, however, Robin attempted to defeat the application of the Honeywell defensive clauses by invoking the Act in his opposition to Honeywell's summary judgment motion. The district court considered the fraud claim on its merit, holding it was "without evidentiary support in the record," although it also later adverted to Robin's failure to raise fraud prior to his motion, or "to plead it with particularity." The court then observed, "Similarly, plaintiff's effort to inject the Magnuson-Moss Act into this controversy for the first time is also unavailing," but added that the applicability of the Act is "not entirely clear from the papers" and "it is significant that none of the Louisiana cases even mention [sic] the Act." In response Robin attempts to support both attacks on the contract clauses and urges, alternatively, that, if the problem lies in failure to plead these defenses properly, the case be remanded to permit it to file another amended complaint.
 
 
 13
 We reject the prayer for another round of pleadings, however, because the briefs filed in support of and in opposition to the motion for summary judgment adequately explore the merits of Robin's arguments and because, as thus amplified, they are not sufficient to warrant further skirmishing. The fraud claims were never set forth with any particularity, as both the Federal Rules of Civil Procedure[10] and the settled jurisprudence[11] require. Furthermore, a claim of misrepresentation of the quality of a product cannot be maintained on a contract that explicitly recognizes the possibility of, and limits liability for, a failure of the product to operate properly. As the district court correctly noted, the fraud claim is "an attempt to recast a mere negligence claim to something else in order to escape the clear reach of [Louisiana] law."
 
 
 14
 The Magnuson-Moss Act,[12] the applicable portion of which is set forth in the footnote[13] prevents the supplier of a consumer product from avoiding an implied warranty if the supplier makes "any written warranty" or "enters into a service contract" with the consumer. Robin's evidentiary materials and briefs make clear that none of the written agreements meets these criteria. First, Honeywell made no--indeed negated any--written warranty. The contract specifically stated that "[Honeywell] does not make any representation or warranty." Second, all service of the system was obtained separately by oral requests. The Act defines a service contract as "a contract in writing to perform, over a fixed period of time or for a specified duration, services relating to the maintenance or repair (or both) of a consumer product."[14] Each of the three written contracts had blanks indicating the type of contract made or service to be furnished. On each there was a blank entitled "Maintenance." In none of the three was this service checked. Therefore, none provided for maintenance or service of the system. Even if Robin had pleaded a Magnuson-Moss claim, the conditions are not present that would prevent Honeywell from disclaiming any implied warranty. The Act does not require that a seller give a warranty on a consumer product, only that if a warranty is given, it must comply with the terms of the act.[15]
 
 
 15
 Robin also challenges the validity of the provisions under Louisiana law. The warranty-disclaimer clause is printed in bold face. Robin contends that it is nevertheless unenforceable because the representative of Honeywell who sold him the system and executed the contracts did not bring the clause to his attention, supporting this claim by his own affidavit. In Louisiana, a waiver of warranty is unenforceable unless clear, unambiguous, and brought to the buyer's attention.[16] The complaint, however, asserts only a claim for damages founded on tort, and alleges no claim for breach of warranty, express or implied. The district court, therefore, properly refrained from ruling on the attempt to assert that a warranty never pleaded had not been waived. Finally, the district court also properly rejected Robin's contention that the agreement was an adhesion contract. Louisiana courts have already rejected similar claims in suits based on exculpatory clauses in alarm contracts.[17]
 
 IV.
 
 16
 Most of the complaint is focussed on charges of negligence in failing properly to install the system but the complaint also gave notice of a charge that Honeywell was negligent in rendering repair services. Thus, the original complaint alleges Honeywell's gross negligence in "refusal to properly repair or replace the alarm system," and also avers willful disregard of "the need to double check the alarm system ... knowing that they were continuously having problems with the same." It also alleges that, if Honeywell had monitored the system properly "and/or repaired or replaced" it, Robin would not have suffered the damages he claims.
 
 
 17
 Honeywell and Robin agree that none of the three written agreements constituted a service contract. Robin called on Honeywell a number of times for maintenance and repair services, for each of which he was billed separately. In connection with these, each of the complaints allege:
 
 
 18
 Honeywell personnel were grossly negligent to the point of being wanton and willful in their refusal to properly repair or replace the alarm system after numerous visits to 519 Iona Street;
 
 
 19
 * * *
 
 
 20
 * * *
 
 
 21
 If Honeywell's system had operated properly and if Honeywell employees had monitored the system properly and/or repaired or replaced same and reported the fire upon its inception plaintiff would not have suffered the damages complained of.
 
 
 22
 In depositions, Robin and his wife testified that they telephoned Honeywell from time to time and orally requested service or repairs. Their oral requests were then reflected in a service order contained on Honeywell Protection System's Service Report Form. That service report is the only written service order, and it contains no limitation of liability or waiver of warranty. On each occasion, Honeywell charged a separate fee for its services.
 
 
 23
 The district court noted that the suit related inter alia to negligence in "servicing the system." Honeywell submitted no evidence that would warrant rejection of this claim and, while Robin's evidentiary materials were not directed to this charge, they did at least state facts from which an inference of negligence might be drawn. We therefore find the record insufficient to warrant summary judgment on this claim, and for that reason, we remand the case for further consideration. In doing so, we imply no fault on the part of the district court. The parties did not address its attention to the issue. While Honeywell asserted its defenses to all of the other claims, it did not even confront this claim, and adduced no evidence that would warrant a summary judgment on it. While Robin gave notice of his claim for negligence in rendering services, he did so with little clarity. In response to Honeywell's motion, Robin did not direct the court's attention either to its claim or to the lack of evidence to warrant its dismissal. Because the claim was, however, articulated to some degree and the rejection of it might, if it has any merit, work a gross injustice, we feel obliged to permit its consideration.[18]
 
 
 24
 Our reversal does not imply any opinion concerning the propriety of a summary judgment on this claim if properly made and supported.
 
 
 25
 For these reasons, the district court judgment is affirmed as to all claims but Robin's claim for negligence in rendering services under oral agreements subsequent to the written contracts. As to that claim, the case is remanded. Upon remand, Robin shall file a motion for leave to file an amended complaint setting forth this claim clearly and separately from all other contentions previously made, and the court shall conduct further proceedings consistent with this opinion.
 
 
 26
 AFFIRMED IN PART and REVERSED IN PART and REMANDED.
 
 
 
 [1]
 Limits of Contractor's Liability. The parties agree that the customer retains the sole responsibility for the life and health of persons in the protected premises and for protecting against property losses or losses due to personal injury in the protected premises relating both to his own person or property or to that of others. It is therefore agreed that Contractor is not responsible for personal injury or other losses which are alleged to be caused by the improper operation of the system, whether due to defects in the system or acts or omissions of the Contractor in receiving and responding to alarm signals. The parties further agree that the Contractor is not an insurer and that insurance, if any, covering such personal injury and other losses be obtained by Customer. If, not withstanding the above agreements, there should arise any liability on the part of the Contractor, such liability shall be limited to an amount equal to six times the monthly charge provided above or $250, whichever is greater
 NO WARRANTY. THE CONTRACTOR DOES NOT MAKE ANY REPRESENTATION OR WARRANTY, INCLUDING ANY IMPLIED WARRANT OF MERCHANTABILITY OR FITNESS, THAT THE SYSTEM OR SERVICE SUPPLIED MAY NOT BE COMPROMISED, OR THAT THE SYSTEM, OR SERVICES WILL IN EVERY CASE PROVIDE THE PROTECTION FOR WHICH IT IS INTENDED.
 
 
 [2]
 15 U.S.C. Sec. 2301 et seq
 
 
 [3]
 Hill v. Liberty Mut. Ins. Co., 357 So.2d 61, 63 (La.Ct.App.), cert. denied, 359 So.2d 196 (La.1978)
 
 
 [4]
 See La.Civ.Code Art. 2004
 
 
 [5]
 W. Prosser & W. Page Keeton, The Law of Torts Sec. 34 (5th ed. 1984) (quoting Wilson v. Brett, 152 Eng.Rep. 737 (1843))
 
 
 [6]
 Haspel v. Rollins Protective Serv., 490 So.2d 530, 532 (La.App.), cert. denied, 496 So.2d 326 (La.1986); see also Carriage Meat Co. v. Honeywell, Inc., 442 So.2d 796, 798 (La.App.1983)
 
 
 [7]
 See Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 2553-54, 91 L.Ed.2d 265 (1986); Fontenot v. Upjohn Co., 780 F.2d 1190, 1196 (5th Cir.1986)
 
 
 [8]
 490 So.2d at 533; cf. Lazybug Shops v. American Dist. Tel. Co., 374 So.2d 183, 185 (La.App.), cert. denied, 376 So.2d 1271 (La.1979)
 
 
 [9]
 Haspel, 490 So.2d at 533; see Carriage Meat, 442 So.2d at 798
 
 
 [10]
 Fed.R.Civ.P. 9(b)
 
 
 [11]
 See, e.g., Summer v. Land & Leisure, Inc., 664 F.2d 965, 970-71 (5th Cir.1981), cert. denied, 458 U.S. 1106, 102 S.Ct. 3484, 73 L.Ed.2d 1367 (1982)
 
 
 [12]
 15 U.S.C. Sec. 2301, et seq
 
 
 [13]
 No supplier may disclaim or modify (except as provided in subsection (b) of this section) any implied warranty to a consumer with respect to such consumer product if (1) such supplier makes any written warranty to the consumer with respect to such consumer product, or (2) at the time of sale, or within 90 days thereafter, such supplier enters into a service contract with the consumer which applies to such consumer product. 15 U.S.C. Sec. 2308(a). (Emphasis added.)
 
 
 [14]
 15 U.S.C. Sec. 2301(8)
 
 
 [15]
 See 15 U.S.C. Sec. 2302(b)(2); Boelens v. Redman Homes, Inc., 748 F.2d 1058, 1061 (5th Cir.1984)
 
 
 [16]
 Prince v. Paretti Pontiac Co., 281 So.2d 112, 117 (La.1973); Jeansonne v. Leon Pickard Chevrolet, 447 So.2d 551, 555 (La.App.1974)
 
 
 [17]
 E.g., Haspel v. Rollins Protective Servs., 490 So.2d 530, 533 (La.App.), cert. denied, 496 So.2d 326 (La.1986)
 
 
 [18]
 See Fed.R.Civ.P. 8(f)