Michael J. McNAMARA and Elizabeth D. McNamara, Plaintiffs,

v.

NOMECO BUILDING SPECIALTIES, INC. (a Minnesota Corporation doing business as Pella Products and the Pella Window Store) and Pella Corporation (an Iowa Corporation), Defendants.

No. Civ. 97–310 (JMR/RLE).

United States District Court, D. Minnesota.

Nov. 2, 1998.

James F. Baldwin, St. Paul, MN, for Plaintiffs.

David A. Arndt, Hibbing, MN, for Nomeco.

### ORDER

ROSENBAUM, District Judge.

Based upon the Report and Recommendation of United States Magistrate Judge Raymond L. Erickson, and after an independent review of the files, records and proceedings in the above-titled matter, it is—

ORDERED:

1. That Defendant Nomeco Building Specialties' Motion for Summary Judgment [Docket No. 13] is granted, as to the Plaintiffs' Seventh Cause of Action, under the Magnuson–Moss Warranty Act, but denied as to the Plaintiffs' Fourth and Sixth Causes of Action, under the Minnesota Consumer Fraud Act.

2. That the Plaintiffs' Seventh Cause of Action is dismissed, with prejudice, as to Defendant Nomeco Building Specialties, Inc.

### REPORT AND RECOMMENDATION

ERICKSON, United States Magistrate Judge.

#### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(B), upon the Motion of the Defendant Nomeco Building Specialty, Inc. ("Nomeco") to Dismiss, or to award Summary Judgment on, the Plaintiffs' Fourth, Sixth, and Seventh Causes of Action ("Counts IV, VI, VII").

A Hearing on the Motion was conducted on October 1, 1998, at which time the Plaintiffs appeared by James F. Baldwin, Esq.; Nomeco appeared by David A. Arndt, Esq.; and Defendant Pella Corporation ("Pella"), having not joined in Nomeco's Motion, made no appearance.

For reasons which follow, we recommend that the Motion be granted, in part, and that Count VII, which asserts liability under the Magnuson–Moss Warranty Act ("Magnuson–Moss"), Title 15 U.S.C. § 2301 *et seq.*, be dismissed as to Nomeco.

#### II. *Factual and Procedural Background*

The Plaintiffs are homeowners, who live on Pike Lake in Duluth, Minnesota. They were in the process of remodeling their lake home, when they contacted Donald E. Bergeson ("Bergeson"), who is a Nomeco sales representative, in order to discuss the replacement of their Pella-manufactured bay window. The window, which faces the lake, had a tendency to fog over with exterior condensation in the Summer months, due to climatological conditions.

The Plaintiffs told Bergeson that they wanted to replace the bay window with one that would be condensation-free throughout the Summer. A fog-free replacement window was critical to the Plaintiffs' as their

current condensation problems were obscuring the view of their lake. Bergeson met with the Plaintiffs at their residence, in order to further assess the condensation problem. Bergeson claims to have relayed the Plaintiffs' problem to Keith Rudd ("Rudd"), who is a Pella representative. Rudd does not recall, however, having been contacted by Bergeson, or having made any product recommendations to him. *Deposition of Keith Rudd, Le Phan Aff., Ex.* C. After having purportedly discussed the situation with Rudd, Bergeson told the Plaintiffs that Rudd had recommended the installation of Pella's "Smart Sash III" window as a replacement for the problematic bay window.

The Plaintiffs asked Bergeson if the Smart Sash III windows would experience the same condensation difficulties, and Bergeson responded that, based upon what he had learned from Pella, there would be no condensation difficulties with the new bay window. According to the Plaintiff Michael McNamara, Bergeson "guaranteed us verbally that the *** new Pella window would not have that condensation problem." *Deposition of Michael McNamara* at 23, *Affidavit of H. Le Phan, Ex. A.* Based upon Bergeson's oral representation, that the windows would be fog-free, the Plaintiffs purchased the Smart Sash III bay window, which their contractor then installed. Nomeco did not issue any written warranty, to the Plaintiffs, in connection with the sale of the Pella window. See, *Plaintiff's Answer to Nomeco's Interrogatory No. 13, Affidavit of David A. Arndt, Ex. B.*

Notwithstanding Bergeson's alleged representation to the Plaintiffs, the new window experienced the same condensation problems that had plagued their old window. Apparently, the Plaintiffs are now trying, again, to replace their bay window. They have testified that, in retrospect, they do not believe that Bergeson lied to them, but only parroted misinformation which had been provided to him by Pella. See, *Deposition of Michael McNamara* at 56-57, *Arndt Aff., Ex.* C; *Deposition of Elizabeth McNamara* at 30, *Arndt Aff., Ex.* D. To recover their claimed losses, the Plaintiffs commenced this action in which they allege claims for a breach of contract, a breach of an express warranty, a violation of the Uniform Commercial Code, a

violation of the Minnesota Consumer Fraud Act, a violation of the Minnesota Consumer Protection Act, a violation of Magnuson-Moss, and a right to attorney's fees for the consumer fraud claim. Nomeco has moved to dismiss, or to be awarded Summary Judgment on, the consumer fraud and related attorney's fees claims, and on the Magnuson-Moss claim. Since we have relied on materials outside of the Complaint, in order to resolve this matter, we address the Motion as one for Summary Judgment. See, *Rule 12(b), Federal Rules of Civil Procedure* (if, on a 12(b)(6) Motion, "matters outside of the pleading are *** not excluded by the court, the motion shall be treated as one for summary judgment").

## III. *Discussion*

A. *Standard of Review.* Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the non-moving party, and we have found no triable issue. *Lower Brule Sioux Tribe v. State of South Dakota,* 104 F.3d 1017, 1021 (8th Cir.1997), cert. denied, —— U.S. ——, 118 S.Ct. 64, 139 L.Ed.2d 26 (1997). For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a verdict for the non-moving party. See, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Dodd v. Runyon,* 114 F.3d 726, 729 (8th Cir.1997).

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute. In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit

or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial." *Rule 56(e), Federal Rules of Civil Procedure;* see also, *Anderson v. Liberty Lobby, Inc.,* supra at 256, 106 S.Ct. 2505; *Ivy v. Kimbrough,* 115 F.3d 550, 551 (8th Cir.1997); *Thomas v. Runyon,* 108 F.3d 957, 959 (8th Cir.1997). Moreover, the movant is entitled to Summary Judgment where the non-moving party has failed "to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* supra at 322, 106 S.Ct. 2548; see also, *Greer v. Shoop,* 141 F.3d 824, 826 (8th Cir.1998); *Mayard v. Hopwood,* 105 F.3d 1226, 1228 (8th Cir.1997). No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* supra at 323, 106 S.Ct. 2548; see also, *Bell Lumber and Pole Co. v. United States Fire Ins. Co.,* 60 F.3d 437, 441 (8th Cir.1995); *McLaughlin v. Esselte Pendaflex Corp.,* 50 F.3d 507, 510 (8th Cir.1995); *Settle v. Ross,* 992 F.2d 162, 163 (8th Cir.1993).

B. *Legal Analysis.* Having closely considered the parties' respective submissions, we find that the Plaintiff's Consumer Fraud Act claim is inappropriate for Summary Judgment, but we conclude that, as to the Magnuson–Moss claim, Nomeco is entitled to Judgment as a matter of law.

1. *Minnesota Consumer Fraud Act and Ancillary Claim for Attorney's Fees.*

The Minnesota Consumer Fraud Act prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby ***." *Minnesota Statutes Section 325F.69, Subdivision 1.* Nomeco pinions its Motion for Summary Judgment on this claim solely upon the fact that the Plaintiffs, in retrospect, do not believe that Nomeco's agent, Bergeson, knew that his representations—to the effect that the Smart Sash III window would not encounter condensation problems—were false.

The weight of authority in this jurisdiction holds that negligent misrepresentations, which are made in connection with the sale of merchandise, are actionable as consumer fraud. See, *Church of the Nativity of Our Lord v. WatPro, Inc.,* 474 N.W.2d 605, 612 (Minn.App.1991), aff'd. on other grounds, 491 N.W.2d 1 (Minn.1992); *Eager v. Siwek Lumber & Millwork, Inc.,* 392 N.W.2d 691, 695 (Minn.App.1986), rev. denied (Minn., Oct. 22, 1986); *Yost v. Millhouse,* 373 N.W.2d 826, 831 (Minn.App.1985); *Carlock v. Pillsbury Co.,* 719 F.Supp. 791, 849–50 (D.Minn.1989); *In re Professional Fin. Mgmt., Ltd.,* 703 F.Supp. 1388, 1397 (D.Minn.1989); see also, *Cashman v. Allied Products Corp.,* 761 F.2d 1250, 1255 (8th Cir.1985) (approving consumer fraud Jury Instruction, as long as it "required 'some degree of culpability' by the defendants"). Simply stated, one making representations in the sale of consumer goods can be held liable, even though he had no specific intent to falsely mislead the consumer. Here, the materials which Nomeco has provided for our consideration do not disclose any facts—apart from the Plaintiffs' subjective belief that Bergeson did not "lie" to them—which would suggest that Nomeco's agent had exercised reasonable care in ascertaining, and relaying, the information upon which the Plaintiffs are alleged to have detrimentally relied. As a consequence, Nomeco's attempt to eliminate any genuine issue of material fact, as to the element of scienter under the Minnesota Consumer Fraud Act, wholly misses the mark, and its Motion for Summary Judgment on that claim, and on the related claim for attorney's fees, should be denied.

2. *The Magnuson–Moss Claim.*

The viability of the Plaintiffs' claim under Magnuson–Moss, as it relates to Nomeco, turns on whether the protections of the Act apply to implied warranties which are not attendant to any form of written warranty. As we have noted, the Plaintiffs have conceded that Nomeco did not issue a written warranty in connection with the sale of the bay window, and Nomeco urges that the existence of a written warranty is a condition precedent to any action for a breach of implied warranty under Magnuson–Moss.

In a Section entitled "Remedies in consumer disputes," Magnuson–Moss provides for civil actions, by aggrieved consumers, as follows:

> [A] consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief—
> (A) in any court of competent jurisdiction in any State or the District of Columbia; or
> (B) in an appropriate district court of the United States ***.

*Title 15 U.S.C. § 2310(d)* [emphasis added]. By its express terms, the provision allows actions to be commenced for any violation of the substantive portions of the Act, which regulate both written and implied warranties, and for the breach of an implied warranty. This provision creates "a federal private cause of action for consumers injured by the violation of (1) any obligation under the Act, (2) any warranty subject to the extensive regulatory requirements of the Act, or (3) any implied warranty the deceptive and unconscionable limitation of which was a major focus of the Act's regulatory provisions." *Skelton v. General Motors Corp.*, 660 F.2d 311, 320 (7th Cir.1981), cert. denied, 456 U.S. 974, 102 S.Ct. 2238, 72 L.Ed.2d 848 (1982). Given this broad language, the Plaintiffs argue that they are entitled to enforce an implied warranty, notwithstanding the absence of a written warranty from Nomeco.

As to implied warranties, Magnuson–Moss specifically provides as follows:

> No supplier may disclaim or modify *** any implied warranty to a consumer with respect to such consumer product if (1) such supplier makes any written warranty to the consumer with respect to such consumer product, or (2) at the time of the sale, or within 90 days thereafter, such supplier enters into a service contract with the consumer which applies to such consumer product.

*Title 15 U.S.C. § 2308(a).*

A facial reading of Sections 2310(d) and 2308(a) reveals some tension between their respective intendments. Read in a vacuum,

Section 2310(d) would appear to allow the sort of claim that the Plaintiffs have present here; namely, a free standing cause of action, under Magnuson–Moss, for the alleged breach of the implied warranty of fitness for a particular purpose. See, *Minnesota Statute Section 336.2–315.* Section 2308, however, reflects that an action for the breach of implied warranty would not lie, under Magnuson–Moss, in the absence of a written warranty, on the same product, from the supplier.

Notwithstanding the apparent conflict in these provisions, there is a dearth of authority on the precise question we now face. There is some authority which suggests that, as confirmed by the Act's legislative history, its provisions were intended only to protect consumers from the unconscionable and deceptive use of written warranties, and not to create a Federal cause of action for every implied warranties which could arise under State law. In *Skelton v. General Motors*, 500 F.Supp. 1181 (N.D.Ill.1980), for example, the District Court explained:

> The statute was not designed completely to supplant the state law of warranties and sales, but rather was intended primarily to regulate transactions involving written, usually formal, warranties under the narrow definition of s 101(6). Further, in such transactions the Act not only regulates the contents and effect of the warranty document itself, but is also designed to provide a basic level of honesty and reliability to the entire transaction. Therefore, the Act requires certain written representations, generally the "paper with the filigree border", which trigger the Act's protections. Other written promises presented in connection with the same transaction should also be enforceable as part of the "written warranty."

*Id.* at 1190 [footnotes omitted].

In reversing the District Court's decision, the Seventh Circuit did not address the lower Court's assumption that the issuance of a written warranty was a prerequisite to a Federal claim but, instead, overturned the Court's interpretation of what constituted a written warranty. See, *Skelton v. General Motors Corp.*, supra at 322. As a conse-

quence, the District Court's construction of Magnuson–Moss is well short of controlling.

In *Robin Towing Corp. v. Honeywell, Inc.*, 859 F.2d 1218, 1222–23 (5th Cir.1988), the Court of Appeals for the Fifth Circuit explained that the Act "prevents a supplier of a consumer product from avoiding an implied warranty if the supplier 'makes any written warranty' or 'enters into a service contract' with the consumer." The Court held that a homeowner could not maintain a claim under the Act, for the avoidance of an implied warranty, because "the conditions [i.e., the existence of a written warranty] are not present that would prevent Honeywell from disclaiming any implied warranty." *Id.* at 1223. The decision is also not squarely on point, however, since Honeywell had prospectively disclaimed the implied warranties of merchantability and fitness in the contract itself, and not as an after-the-fact means of avoiding UCC liability. *Id.* at 1220 n. 1. As a result, the Court directed the focus of its analysis to Section 2308(a), and did not squarely address the meaning of Section 2310(d). Here, in contrast to the circumstances in *Robin Towing*, we confront a claimed *breach* of implied warranty, and not a prospective disclaimer of the warranty.

On the other side of the spectrum, there is a smattering of case authority, and academic commentary, which suggests that the Plaintiff's claim is cognizable under Magnuson–Moss. Most directly on point is *McCurdy v. Texar, Inc.*, 575 So.2d 299, 300 (Fla.Dist.Ct. App.1991), which held that a plaintiff could pursue a claim under the Act, even though no written warranty was issued by the supplier. As the Court explained:

> Under 15 [U.S.C.A.] § 2310(d), a consumer must be damaged by a supplier's, warrantor's, or service contractor's failure to comply with "any obligation" under the Act, or under a written warranty, implied warranty, or service contract, in order to obtain federal jurisdiction to bring a suit for damages or other legal and equitable relief in the federal courts. *This provision has not only provided a means of enforcing the substantive requirements of the Act, but has also established a federal cause of action for breach of an implied warranty which has arisen under state law even if no written warranty was involved.*

*Id.* at 300–01 [emphasis added] [alteration in original], quoting *Consumer Product Warranty Suits in Federal Court Under Magnuson–Moss Warranty*, 59 A.L.R.Fed. 461, 470 n. 10 (1982), and citing Miller and Kanter, *Litigation Under Magnuson–Moss; New Opportunities in Private Actions*, 13 U.C.C.L.J. 10, 13 (Summer 1980), Denicola, *The Magnuson–Moss Warranty Act: Making Consumer Product Warranty in a Federal Case*, 44 Fordham L.R. 273 (1975), Reitz, *Consumer Product Warranties Under Federal & State*, § 10.02 (2nd ed.1987).

Nevertheless, the Court, in *McCurdy*, did not so much as advert to Section 2308(a), let alone attempt to reconcile its clear conflict with the broadly phrased language of Section 2310(d).

Other decisions are noteworthy only for what they do not state. In *Feinstein v. Firestone Tire and Rubber Co.*, 535 F.Supp. 595, 601–02 (S.D.N.Y.1982), the District Court denied certification to a class of tire purchasers claiming the breach of an implied warranty, without any written warranty, not because of the absence of a written warranty, but because the majority of the plaintiffs' claims failed on the merits. See also, *Stones v. Sears, Roebuck & Co.*, 251 Neb. 560, 558 N.W.2d 540, 547–48 (Neb.1997) (affirming dismissal of free-standing Magnuson–Moss implied warranty claims by purchasers of propane grills, on the merits); *Hyler v. Garner*, 548 N.W.2d 864, 876 (Iowa 1996) (affirming motor home buyer's recovery for breach of implied warranty of fitness under Section 2310(d)). Of course, none of these cases addressed the issue before us, and their implicit acceptance of the Plaintiffs' position, without the issue having been actually disputed, bears inappreciable precedential weight.

▇▇▇▇ Given the paucity of controlling or persuasive authority, we address the issue as, largely, one of first impression which evokes an issue of pure statutory construction. Of course, the starting point for any statutory interpretation is the plain language of the statute itself. *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409, 113 S.Ct. 2151, 124 L.Ed.2d 368 (1993). If the intent of Congress is clearly expressed in the terms of

the statute, our inquiry is at an end, for we "must give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A. v. Natural Resources Def. Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In ascertaining the Intent of Congress from a plain reading of a statute, it is fundamental that " 'a statute should be interpreted so as not to render one part inoperative.' " *Mountain States Tel & Tel. Co. v. Pueblo of Santa Ana,* 472 U.S. 237, 249, 105 S.Ct. 2587, 86 L.Ed.2d 168 (1985), quoting *Colautti v. Franklin,* 439 U.S. 379, 392, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979).

■ As noted, Section 2310(d), by its terms, appears to generally authorize an action for a breach of an implied warranty. The Act defines an "implied warranty" as "an implied warranty arising under State law (as modified by Sections 2308 and 2304(a) of this title) in connection with the sale by a supplier of a consumer product." *Title 15 U.S.C. § 2301(7).* In turn, Section 2308, as pertinent, makes it unlawful for a supplier to "disclaim" any implied warranty if there is a conjoined written warranty. Quite clearly, Section 2308 does not encompass all "implied warranties," but only those relating to products which have an accompanying written warranty. While the Act does not define the term "disclaim," as used in its ordinary sense, the term means: "1. To deny or renounce any claim to or connection with; disown; 2. To deny the validity of; repudiate; 3. *Law.* To renounce one's right or claim to." *American Heritage Dictionary,* p. 530 (3rd ed.1992). Given the ordinary meaning of the term "disclaim," Section 2308(a) prohibits a supplier from denying liability on an implied warranty, only where there is an accompanying written warranty on the same consumer product. Accordingly, we believe that an implied warranty is "disclaimed" where, as here, the warranty is disowned, repudiated, or renounced. In legal effect, Nomeco has denied the Plaintiffs' entitlement to an implied warranty and, in that respect, Nomeco has "disclaimed" any such implied warranty.

If one were to afford Section 2310(d) the breadth of coverage advocated by the Plaintiffs, then the limitation prescribed in the definition "implied warranty," and the limitation in Section 2308(a) itself, would be rendered superfluous, as any implied warranty would be actionable under the Act, and not merely one that has been coupled with a written warranty. In contrast, in construing Section 2308(a) as mandating the presence of a written warranty as a condition precedent to a Federal implied warranty claim under Magnuson–Moss, no statutory term or provision is abrogated, or nullified. Therefore, we find the latter interpretation, which reconciles the conflicting provisions, to render an accurate interpretation of Congress' intent.

The sensibility of this reading is confirmed by the Act's underlying purpose, as evidenced by its legislative history. As the Seventh Circuit has explained, the drafters were concerned with "deceptive warranty practices," and "believed that consumer product warranties often were too complex to be understood, too varied to allow meaningful comparisons and too restricted to provide meaningful warranty protection." *Skelton v. General Motors Corp.,* supra at 313–14, citing S.Rep. No. 93–151, 93d Cong., 1st Sess. 6–8 (1973), H.R.Rep. No. 93–1107, 93d Cong., 2d Sess. 22–29, reprinted in (1974) U.S.Code Cong. & Ad.News 7702, 7705–11. According to Congress, deceptive warranty practices were most likely to occur when a written warranty was issued. The Report of the House Committee on Interstate and Foreign Commerce reflects this motivating concern:

> [T]he paper with the filigree border bearing the bold caption "Warranty" or "Guarantee" was often of no greater worth than the paper it was printed on. Indeed, in many cases where a warranty or guarantee was ostensibly given the old saying applied "The bold print giveth and the fine print taketh away." For the paper operated to take away from the consumer the implied warranties of merchantability and fitness arising by operation of law leaving little in its stead.

H.R.Rep. No. 93–1107, 93d Cong., 2d Sess. 13, reprinted in (1974) U.S.Code Cong. & Ad.News 7706.

While not conclusive, we find the intentions of Congress, as reflected in the available indicia of legislative intent, to be corroborative of the construction of the Act that we here have drawn. Significantly, we have found no evidence that Congress intended a

Federal replication, or preemption, of the State's regulation of implied warranties through the UCC, and related consumer sales enactments. Of course, adopting the Plaintiffs' construction would necessarily create a second tier of implied warranty claims, as emanating from Federal law. We think that Congress' adoption of a State law standard, for the definition of "implied warranty" reveals Congress' rejection of a wholesale, Federal regulation of implied warranties which have not been accompanied by a written warranty.

Accordingly, since we conclude that a party may not bring an implied warranty claim under Magnuson–Moss, in the absence of an adjoining written warranty, we recommend that Nomeco's Motion for Summary Judgment on the Plaintiffs' Magnuson–Moss claim be granted.

NOW, THEREFORE, It is—

RECOMMENDED:

1. That Defendant Nomeco Building Specialties' Motion for Summary Judgment [Docket No. 13] be granted, as to the Plaintiffs' Seventh Cause of Action, under the Magnuson–Moss Warranty Act, but denied as to the Plaintiffs' Fourth and Sixth Causes of Action, under the Minnesota Consumer Fraud Act.

2. That the Plaintiffs' Seventh Cause of Action be dismissed, with prejudice, as to Defendant Nomeco Building Specialties, Inc.

**NOTICE**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D.Minn. LR1.1(f), and D.Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than October 22, 1998,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than October 22,** 1998, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. § 636 to review the transcript in order to resolve all of the objections made.