No. 61,209

EQUITABLE LIFE LEASING CORPORATION, *Plaintiff*, v. MARION G. ABBICK, *et al.*, *Defendants and Third-Party Plaintiffs/Appellees*, v. MOORE BUSINESS SYSTEMS, INC., *Third-Party Defendant/Appellant*.

(757 P.2d 304)

Opinion filed July 8, 1988.

*Alan V. Johnson*, of Sloan, Listrom, Eisenbarth, Sloan & Glassman, of Topeka, argued the cause and *Michael E. Francis* and *Martha A. Peterson*, of the same firm, were on the brief for appellant.

*Walter P. Robertson*, of Walter P. Robertson, Chartered, of Junction City, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

HERD, J.: This is an action for violation of the Kansas Consumer Protection Act (KCPA) (K.S.A. 50-601 *et seq.*), breach of contract, and common-law fraud brought by Marion Abbick against Moore Business Systems (Moore).

The controversy arose out of the following stipulated facts. Abbick, a practicing dentist in Junction City, was approached by Moore in 1982 about purchasing a computer system. Moore represented it was experienced in the management of dental practices and it would survey Abbick's practice and recommend a system to fit his needs. Moore represented the purchase of a computer system would increase productivity and profits, produce accurate and timely financial records, and benefit Abbick in other ways. Abbick was appropriately skeptical. Moore overcame

this by representing the computer system could be returned "if it did not work out."

In reliance on Moore's representations, Abbick made a down payment of $1,185.00 on a computer system. For financing purposes, the transaction ultimately was accomplished through a lease/purchase agreement with Moore as seller, Equitable Life Leasing Corporation (Equitable) as buyer/lessor, and Abbick as lessee. Numerous problems arose with the system, causing substantial disruption to Abbick's dental practice, loss of hundreds of hours, and confusion of financial records. Eventually, Abbick ceased making payments to Equitable and Equitable sued Abbick on the agreement. Abbick claimed the computer system failed to increase his profits or perform as represented, and that Moore refused to take back the system as promised. Abbick brought a third-party action against Moore for violation of the KCPA, breach of contract, and fraud. Equitable's claim against Abbick has been resolved, leaving only the third-party dispute for our resolution.

The parties are in some disagreement on the jury verdict because the verdict form is ambiguous. However, a careful reading of the form, coupled with the instructions, clearly establishes the intent of the jury and resolves the verdict's ambiguity. See *State ex rel. Stephan v. GAF Corp.*, 242 Kan. 152, 160, 747 P.2d 1326 (1987).

The jury first considered whether Moore violated the Kansas Consumer Protection Act. K.S.A. 50-623 provides the KCPA is to be construed liberally to promote the objective, among others, of protecting consumers from suppliers who commit deceptive and unconscionable acts. K.S.A. 50-626(b) provides a non-exclusive list of examples of prohibited deceptive acts, including (b)(3): "the intentional failure to state a material fact, or the intentional concealment, suppression or omission of a material fact, whether or not any person has in fact been misled." The jury found that Moore had violated this provision by not intending to accept a return of the computer system as promised.

The jury found Moore had not breached any warranties in the sale of the computer system. However, it found Moore had breached the contract by refusing to take back the computer system as promised, awarding Abbick actual damages for this breach in the amount of $1,185. The trial court upheld the

verdict, but imposed a civil penalty of $2,000.00 against Moore in lieu of the actual damages award of $1,185.00, pursuant to the KCPA, K.S.A. 50-634(b), and allowed Abbick attorney fees pursuant to K.S.A. 50-634(e).

The jury was given the standard instruction, PIK Civ. 2d 14.41, regarding an independent common-law action for fraud, specifically the fraudulent promise of future events. Abbick had to prove not only that Moore intentionally made a promise it was not intending to keep (which alone would be enough for a violation of the KCPA), but also that the promise was not in fact kept, that the promise was made for the purpose of inducing Abbick to act upon the promise, and that Abbick relied on the promise and suffered damages due to this reliance. The jury found Moore had committed fraud, and awarded $15,000 in punitive damages.

The first issue is whether the trial court erred in refusing to require Abbick to elect his remedy. Moore contends since all three claims were based on the same course of conduct they were inconsistent and thus required an election. Moore misinterprets the doctrine of election of remedies. An election is required only when claims are inconsistent, such as where one claim alleges what the other denies, or the allegations are mutually repugnant. *Griffith v. Stout Remodeling, Inc.*, 219 Kan. 408, 548 P.2d 1238 (1976).

Moore's argument that Abbick's claim under the KCPA and his claim for fraud are inconsistent is without merit. Moore states the KCPA claim was made under K.S.A. 50-627(b)(6), which provides it is unconscionable for a supplier to make a misleading statement of *opinion* on which the consumer was likely to rely to the consumer's detriment. Moore then contends this claim is inconsistent with a claim for fraud, since fraud is based on misrepresentation of fact. It is true Abbick's original claim was made under K.S.A. 50-627, but the jury was instructed on deceptive acts under K.S.A. 50-626 at trial to conform to the proof. K.S.A. 50-626 prohibits any deceptive *act* in consumer transactions. Further, the legislature, in a 1985 amendment, clearly provided that a plaintiff who decides to proceed under the KCPA does not forfeit any other common-law rights. K.S.A. 1987 Supp. 50-646.

Moore's contention that the claims for breach of contract and

fraud are inconsistent is also without merit. Moore claims Abbick has elected to affirm the contract by failing to seek rescission. He is thus, Moore contends, bound by the terms of the contract and cannot prove reliance on the misrepresentation, an essential element of fraud. The cases upon which Moore relies are inapposite, in that, in the case at bar, there was a reasonable claim made that Abbick attempted to return the system but Moore refused to accept it.

The next issue is whether the trial court erred in awarding punitive damages. Breach of contract, standing alone, does not call for punitive damages, but such damages are allowed if an independent tort of fraud is proven. *W-V Enterprises, Inc. v. Federal Savings & Loan Ins. Corp.*, 234 Kan. 354, 369, 673 P.2d 1112 (1983). Moore argues the trial court erred in awarding punitive damages for fraud when the jury made no finding of actual damages for fraud. It is the general rule that punitive damages may not be awarded in the absence of actual damages on the basis that the law does not punish conduct, however willful or wanton, which does not cause injury.

In this case, however, actual damages were awarded. The jury found Moore had breached its promise under the contract that it would take back the system if Abbick could not use it, and awarded actual damages of $1,185.00. The breach of contract was thus grounded upon fraudulent inducement. An award of actual damages on the fraud claim would have been duplicative and was properly not submitted to the jury. The trial court did not err in allowing the award of punitive damages.

The next issue is whether the trial court erred in awarding a $2,000 civil penalty award under the KCPA in addition to punitive damages. Moore contends the awards constitute a double penalty and therefore violate due process.

This argument has no merit for several reasons. Moore cites several cases, involving statutory treble damages, where courts have held the legislative intent of the mandatory treble damages award was punitive and could not be supplemented by an additional punitive damage award. Moore contends it could be found the KCPA does allow for treble damages because K.S.A. 1987 Supp. 50-801(b) provides for treble damages for certain acts prohibited in Chapter 50 of the Kansas Statutes Annotated. The prohibited acts to which the statute refers, however, are those

acts "relating to unlawful acts, agreements, monopolies, trusts, conspiracies or combinations in restraint of trade." The statute is clearly meant as a protection against restraint of trade, and does not include the practices prohibited by the KCPA.

The KCPA does not provide for treble damages. K.S.A. 50-634(b) provides that a consumer aggrieved by a violation of the act may recover actual damages or a prescribed civil penalty, whichever is greater. K.S.A. 50-636(a) provides for a maximum civil penalty of $2000. The Kansas Comment to K.S.A. 50-636 provides: "The purpose of this provision is to encourage enforcement of the act by a consumer acting as his own 'private attorney general.' " This provision is remedial rather than punitive. Its purpose is to encourage aggrieved consumers with small claims to file suit.

Although this court has not considered the issue of punitive damages in relation to the KCPA, we affirmed an award of punitive damages in *Geiger v. Wallace*, 233 Kan. 656, 661-62, 664 P.2d 846 (1983), where a similar question was presented relating to the Kansas Residential Landlord and Tenant Act, K.S.A. 58-2540 *et seq.* As in the landlord act, the KCPA has no language which precludes an award of punitive damages in an appropriate case. K.S.A. 1987 Supp. 50-646 specifically provides that nothing in the KCPA limits any other remedies provided by law. Here, the jury found Abbick relied on a fraudulent promise of future events. This was an independent tort with different elements from those which constituted a violation of the KCPA. The trial court did not err in affirming the jury award of punitive damages.

The final issue is whether the trial court erred in awarding attorney fees pursuant to K.S.A. 50-634(e). Moore argues the jury was allowed to consider the expense of litigation under the punitive damages instruction, thus making the attorney fee award under the KCPA duplicative. We note the probable expense of litigation was only one of six factors which the jury could consider, along with the amount of actual damages, intent of the defendant, financial condition of the defendant, mitigating factors, and nature of the wrong. Moore rightfully does not argue the jury cannot consider the amount of actual damages in its determination of punitive damages. The purpose of damage awards or attorney fees is to compensate, whereas the purpose of punitive damages is to deter and punish. Under the KCPA, the

trial court has the discretion to award attorney fees and, in an action for fraud, the jury may award punitive damages. We find no error.

The judgment of the trial court is affirmed.