**Michael T. MABERRY, Plaintiff,**

v.

**Sameer SAID, et al., Defendants.**

**No. 94–2416–JWL.**

United States District Court, D. Kansas.

May 24, 1996.

---

**4.** Adopted by the Kansas legislature in 1897.

**5.** Adopted by the Kansas legislature in 1889.

Bernard E. Brown, Law Office of Bernard E. Brown, Westwood, KS, Jeffrey P. Johnson, Kansas City, MO, for plaintiff.

Alan P. Blinzler, Overland Park, KS, for Sameer Said, S.A.S. Auto Sales, Inc.

Justin J. Johl, Kevin J. Karpin, Shook, Hardy & Bacon L.L.P., Overland Park, KS, Michael D. Doering, Mark W. Untersee & Associates, P.C., Kansas City, MO, for Citizens Bank & Trust.

### *MEMORANDUM AND ORDER*

LUNGSTRUM, District Judge.

On February 7, 1996, the jury returned a special verdict in favor of plaintiff Michael Maberry and against defendants Sameer Said, S.A.S. Auto Sales, Inc. (SAS) and Citizens Bank & Trust (Citizens) on various counts. The parties have filed numerous post-trial motions. The following are presently before the court: Citizens's motion for judgment notwithstanding the verdict or, in the alternative, to alter or amend judgment, or for a new trial (Doc. # 174); Mr. Said's and SAS's motion for judgment notwithstanding the jury verdict, or, in the alternative for a new trial, or to alter or amend the judgment (Doc. # 176); and plaintiff's motion for new trial on his claims against defendant Citizens under federal odometer law and for fraudulent misrepresentation, and to alter or amend the judgment with respect to K.C.P.A. and Kansas odometer civil penalties, and to alter or amend the judgment with respect to an apparent clerical error (Doc. # 178). For the reasons stated below, the court denies the motions by Citizens, Mr. Said and SAS and grants in part and denies in part plaintiff's motion.

## I. *Discussion*

Defendants have renewed their motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b). In addition, the defendants and plaintiff have moved for a new trial or to alter or amend the judgment. As noted below, the court alters the judgment with respect to the civil penalties under the Kansas Consumer Protection Act (KCPA) and to correct a typographical error, but otherwise denies the parties' motions.

### A. *Legal Standards*

Judgment as a matter of law under Rule 50(b) "should be cautiously and sparingly granted." *Lucas v. Dover Corp.*, 857 F.2d 1397, 1400 (10th Cir.1988). The jury's verdict must be affirmed if, "viewing the record in the light most favorable to [the nonmoving party], there is evidence upon which the jury could properly return a verdict for [the nonmoving party]." *Harolds Stores Inc. v. Dillard Dept. Stores, Inc.*, 82 F.3d 1533, 1546 (10th Cir.1996) (citing *SCFC ILC, Inc. v. Visa USA, Inc.*, 36 F.3d 958, 962 (10th Cir. 1994)). A court does not weigh the evidence, pass on the credibility of the witnesses, or substitute its conclusions for those of the jury. *Id.* (citing *Magnum Foods, Inc. v. Continental Casualty Co.*, 36 F.3d 1491, 1503 (10th Cir.1994)). On the other hand, judgment as a matter of law must be granted if there is no legally sufficient evidentiary basis with respect to a claim or defense under the controlling law. *Harolds Stores Inc.*, 82 F.3d at 1546–47 (citing Fed.R.Civ.P. 50(a)). A legally sufficient basis requires more than "a scintilla of evidence" favoring the nonmoving party. *Cooper v. Asplundh Tree Expert Co.*, 836 F.2d 1544, 1547 (10th Cir.1988).

Motions for a new trial are committed to the sound discretion of the trial court. *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556, 104 S.Ct. 845, 850, 78 L.Ed.2d 663 (1984); *Hinds v. General Motors Corp.*, 988 F.2d 1039, 1046 (10th Cir. 1993). They are "not regarded with favor and should only be granted with great caution." *United States v. Kelley*, 929 F.2d 582, 586 (10th Cir.), *cert. denied*, 502 U.S. 926, 112 S.Ct. 341, 116 L.Ed.2d 280 (1991). In reviewing a motion for a new trial the court

must view the evidence in the light most favorable to the prevailing party. *Griffin v. Strong,* 983 F.2d 1544, 1546 (10th Cir.1993). A new trial based upon an error of law is unwarranted unless that error affected the substantial rights of the parties. Fed. R.Civ.P. 61; *Heyen v. United States,* 731 F.Supp. 1488, 1489 (D.Kan.1990), *aff'd,* 945 F.2d 359 (10th Cir.1991). "The party seeking to set aside a jury verdict must demonstrate trial error which constitutes prejudicial error or that the verdict is not based on substantial evidence." *White v. Conoco, Inc.,* 710 F.2d 1442, 1443 (10th Cir.1983). The court should "ignore errors that do not affect the essential fairness of the trial." *McDonough Power Equip., Inc.,* 464 U.S. at 553, 104 S.Ct. at 848.

### B. *Citizens's Motion*

■ As its initial argument, Citizens incorporates by reference its previously submitted motions for judgment as a matter of law. Citizens then elaborates on two arguments originally made in those previously submitted motions: plaintiff's credit related claims must fail and the evidence does not support an award of punitive damages. Citizens does not specifically address any of its other previously submitted arguments nor attempt to show why the court's earlier rejection of those arguments was erroneous, however. In the absence of a showing of anything to the contrary, the court believes those earlier rulings were correct and they, therefore, stand unaltered.

Turning to the arguments on which Citizens elaborates, the court is unpersuaded by Citizens's assertion that plaintiff's credit related claims, tortious interference with a prospective advantage and violation of the KCPA, must fail. In support of its assertion, Citizens focuses on a letter Citizens received from Mike Martin, plaintiff's former attorney. In the letter, Mr. Martin stated that, pursuant to K.S.A. § 84–2–717, plaintiff would make no further payments on the vehicle. At the time plaintiff ceased making payments, he owed over $3800 on the note. Because K.S.A. § 84–2–717 permits plaintiff to deduct only his damages from the amount owed and because the jury concluded that

plaintiff suffered actual damages of $1000 from the fraudulent misrepresentation, Citizens concludes that plaintiff owed it money when it made the credit reports and therefore Citizens could not be liable to plaintiff. The court rejects Citizens's argument.

As an initial matter, as a defense to plaintiff's claims, Citizens's argument that the damages suffered by plaintiff did not equal or exceed the amount owed on the note should have been set out in the pretrial order to have been preserved. It was not. Nor was the case tried on that theory. It is a creative argument that Citizens makes too late.

■ Moreover, even if Citizens could proceed on this theory, it would not be a basis for judgment as a matter of law, a new trial or to alter or amend the judgment. After Citizens received the letter, it did not challenge plaintiff's reliance on K.S.A. § 84–2–717 or dispute the veracity of plaintiff's claim of mileage misrepresentation.[1] Citizens had a right to seek a judicial determination of whether or not a mileage misrepresentation breached the contract and, if so, whether or not the damages caused by the breach exceeded the amount owed by plaintiff on the note. Citizens chose not to do so. Rather, Citizens indicated that it would exercise its recourse option on the note and collect from SAS. Citizens gave plaintiff every indication that plaintiff's cessation of payments would not result in a negative credit report. Furthermore, Citizens did collect the amount owed from SAS. Months later, however, Citizens, in response to SAS's complaints that it had not authorized its employee to sell the note with recourse, paid SAS back and, with no notice to plaintiff, issued a credit report stating that plaintiff had failed to make his payments on the loan. Citizens issued the report fully realizing the consequences a derogatory report can have. In short, Citizens gave the appearance of accepting plaintiff's contention that he had a right to stop payment and then, months later and with no notice, issued a derogatory credit report on plaintiff. These circumstances provide a clear basis from which a reasonable jury

---

1. Indeed, as illustrated below, a reasonable jury could have concluded that Citizens knew that the letter was accurate and that the mileage misrepresentations had occurred.

could find for plaintiff on both of his credit reporting claims. Citizens's contention to the contrary is rejected.

■ In addition to challenging its liability for plaintiff's credit reporting claims, Citizens asserts that plaintiff failed to introduce evidence demonstrating that Citizens acted with the evil motive or reckless indifference necessary to support an award of punitive damages. As a result, Citizens contends that neither punitive damages award entered against it, for fraudulent concealment and for tortious interference with a business advantage, is justified. The court again disagrees.

The record contains evidence from which a reasonable jury could infer that Citizens acted with the requisite intent. As to concealment of the mileage misrepresentations, Citizens's long-standing practice was to review title documents, which were in Citizens's possession and revealed the mileage discrepancy. In addition, after the state of Missouri rejected the title application submitted by Citizens, the bank resubmitted an application with a tiny "1" written in front of the 52,000 mileage entry, providing an indication of recognition that the incorrect mileage had originally been stated on the application. From these documents as well as testimony in the record, a reasonable jury could have concluded that Citizens was aware of the mileage misrepresentations and chose to process and purchase the loan anyway without disclosing the information to Mr. Maberry. By acting with such knowledge, Citizens could be considered by a reasonable jury to have participated in the fraudulent misrepresentations by concealing material facts with an evil motive or with reckless indifference to the rights of plaintiff.

■ Similarly, regarding the award of punitive damages for tortious interference with a prospective advantage based on Citizens's credit reporting, the evidence was ample to support the jury's verdict. As noted above, Citizens issued the derogatory credit report despite its apparent assurances that it would not. Citizens also was well aware that

doing so could adversely affect plaintiff's opportunities to obtain credit. Viewing the events leading to the report, the jury could reasonably have concluded that Citizens knew that fraudulent misrepresentations had occurred and issued the derogatory reports anyway without notifying plaintiff and heedless of the consequences to him. Without question, such conduct would support a jury finding that Citizens acted with malice or reckless indifference to plaintiff's rights. Citizens's motion is therefore denied.

## C. *Mr. Said's and SAS's Motion*

■ As does Citizens, Mr. Said and SAS initially incorporate by reference their previously submitted motions for judgment as a matter of law. Mr. Said and SAS do not, however, specifically address the arguments raised in their previously submitted motions or attempt to show why the court's earlier rejection of those arguments was erroneous. Because the court has been shown nothing new to demonstrate that its earlier rulings were not correct, they stand unaltered.

Mr. Said and SAS also contend that the evidence in the record cannot support separate awards of punitive damages against Mr. Said and SAS for their individual conduct regarding the mileage misrepresentations.[2] The court disagrees. Instruction No. 10 sets forth the claims of plaintiff against Mr. Said. In that instruction, plaintiff alleges two theories of liability that could support an award of punitive damages against both Mr. Said and SAS: first, that Mr. Said participated in the fraud of another defendant, and second, that Mr. Said was engaged in a scheme of fraudulent conduct with another defendant. According to Instruction No. 19, a person becomes a "participant" in fraud by:

1. accepting and retaining the benefits of the wrongful conduct of others provided that the accepting party had knowledge that the conduct was wrongful at the time of the conduct or at the time it accepted

**2.** In their motion, Mr. Said and SAS assert that "there is no evidence to support any of plaintiff's claims." They tie this statement to the arguments made in their previously submitted motions. The present motion appears focused on the two punitive damages award. If, however,

Mr. Said and SAS are asserting that no evidence exists supporting the jury's finding of liability on various counts, the court notes that the evidence supporting multiple punitive damages awards is also sufficient to affirm the jury's finding of liability.

and retained the benefits of the conduct; or

2. actively taking part in a common plan or design to commit a tortious act, furthering that plan by cooperation or request, lending aid or encouragement to a party committing a tortious act, or ratifying and adopting the tortiously acting party's actions.

Finally, as detailed by Instruction No. 11, plaintiff claimed that "SAS Auto Sales, Inc. represented that the truck had low mileage and that the odometer on the truck accurately stated the truck's actual mileage."

■ The jury had ample evidence from which it could conclude that SAS, acting through its agent Robert Mayfield, committed fraud by intentionally misrepresenting the mileage on the truck. The record also contained evidence from which a reasonable jury could conclude that Mr. Said participated in the fraud of SAS. The evidence indicates that Mr. Said knew the actual mileage on the truck when he bought it. The Illinois title, which was delivered to the bank after SAS bought the truck, indicated the actual mileage and Mr. Said picked up and examined the title after Citizens received it. Mr. Said and Mr. Mayfield testified that, following the sale, Mr. Said asked if Mr. Mayfield had told plaintiff about the actual mileage. Following this conversation, Mr. Said made a telephone call to plaintiff that could reasonably be construed by a jury as an attempt to persuade plaintiff that no fraudulent misrepresentation occurred. From this evidence, a reasonable jury could conclude that Mr. Said participated in the mileage misrepresentations of SAS by actively taking part in a common plan or design to commit a tortious act, furthering that plan by cooperation or request, lending aid or encouragement to a party committing a tortious act, or ratifying and adopting the tortiously acting party's actions. In addition, a reasonable jury could conclude from this evidence that Mr. Said and SAS, acting through Mr. Mayfield, each acted with an evil motive or in reckless disregard for the rights of plaintiff. The motion by Mr. Said and SAS must therefore be denied.

### D. *Plaintiff's Motion*

■ Plaintiff, asserting that the court's exclusion of certain testimony was erroneous, moves for a new trial. Plaintiff also seeks to alter or amend the court's award of civil penalties.[3] The court denies plaintiff's motion for a new trial but does amend the judgment with respect to civil penalties.

The court originally excluded the testimony in question because it was not relevant to any proper purpose under Federal Rule of Evidence (Rule) 404(b) and, even if was offered for a proper purpose, the minimal probative value of the proposed testimony was substantially outweighed by the danger of unfair prejudice, confusion of the issues and undue delay. Rule 403. In his present motion, plaintiff cites to no rule of evidence as a new basis for admission. Instead, plaintiff relies on two Missouri state court cases, decided in 1933 and 1957, neither of which discuss admissibility under the Federal Rules of Evidence. Thus, plaintiff, following a practice which on both sides has been entirely too prevalent in this case, in essence argues for the admissibility of this evidence without citation to any applicable legal authority.

Even if the court construed plaintiff's motion to be arguing that Rule 404(b) does permit admission, the court would reject the argument for the reasons stated on the record when originally excluding this testimony. Moreover, even if the testimony were relevant to a proper purpose, plaintiff's motion does not address the Rule 403 concerns such testimony implicates. The court remains convinced that any probative value of the proposed testimony is substantially outweighed by the danger of unfair prejudice, confusion of the issues and undue delay. Plaintiff's motion for a new trial is therefore denied.

■ As for plaintiff's motion to alter or amend the court's previous judgment on civil

---

**3.** Plaintiff also moves to correct a typographical error in the judgment. Neither defendants nor the court dispute that a typographical error occurred. The court therefore grants plaintiff's motion to alter paragraph 4 of the judgment. In paragraph 4, "Count VI" shall be changed to read "Count IV."

penalties, plaintiff appears to argue that a maximum penalty of $5000 must be awarded for each violation of the KCPA in order to achieve the purposes of the act. The Kansas legislature has rejected this argument. The amount of the civil penalty authorized by K.S.A. § 50–636 is "not more than $5,000." As noted in the official comments, "[t]here is no minimum civil penalty." K.S.A. § 50–634 cmt. 2. Thus, the plain language of the statute, buttressed by the explanatory observations of the drafters, refutes plaintiff's apparent contention that a finding of a KCPA violation compels a penalty of $5000. Moreover, contrary to plaintiff's contention, Kansas courts have awarded civil penalties far below the maximum authorized by the statute. *See, e.g., Manley v. Wichita Business College,* 237 Kan. 427, 701 P.2d 893 (1985) (awarding $100 civil penalties).

Nevertheless, the court's previous judgment must be altered. When determining the appropriate penalty under the KCPA, reviewing the claims of the parties and the damages sought by plaintiff, in order to evaluate the need of a penalty award to encourage people to seek redress, is an appropriate starting point and the court believes its basic analysis in that regard to have been correct. To the limited extent that the court relied on the practical reality of a large punitive damages award, however, it believes that such reliance was improper. The civil penalty provision is remedial, rather than punitive, in nature. *Equitable Life Leasing Corp. v. Abbick,* 243 Kan. 513, 517, 757 P.2d 304, 307 (1988). Accordingly, determining the appropriate civil penalty should be guided by concerns of remediation, not punishment. As is plaintiff when he argues for a maximum penalty[4], the court's previous ruling was improperly influenced by considerations of punishment.

After careful consideration of the evidence in the record, the purpose of the civil penalty provision, the size of plaintiff's claims and the actual damages awarded, the court assesses a single civil penalty of $1500 against defendants for conduct relating to the mileage misrepresentations and a second civil penalty of $1500 against Citizens arising out of its credit reporting. These civil penalties provide the level of remediation that this record demonstrates is necessary and appropriate.

Under K.S.A. § 50–634(b), plaintiff may recover "damages or a civil penalty ... whichever is greater." Neither party contends that plaintiff may recover, for the same conduct, a civil penalty under the KCPA and actual damages under another theory. Nor would Kansas law support such a position. *See Equitable Life Leasing Corp.,* 243 Kan. at 514–17, 757 P.2d at 306–07 (affirming trial court's award of $2000 KCPA civil penalty in lieu of $1,185 in actual damages for conduct found to breach a contract, to be fraudulent, and to violate the KCPA). Given the actual damages awarded in this case, the court assumes that plaintiff will elect the civil penalties as his recovery and judgment shall be altered accordingly.

Plaintiff also disputes the size of the $100 civil penalty the court awarded for the Kansas Odometer Act (KOA) violation. As the court indicated in its March 13, 1996 Memorandum and Order, although the case law interpreting the KOA is extremely sparse, Kansas courts' analysis of the KOA and the KCPA is likely to be consistent given the similarities between the wording of the statutes. After reexamining the minimal evidence introduced on this count,[5] the court remains convinced that a $100 civil penalty is consistent with the degree of remediation that plaintiff has demonstrated is necessary with respect to the KOA. *C.f., Manley,* 237 Kan. at 432–437, 701 P.2d at 897–901 (finding $100 penalty appropriate under KCPA where no actual damages were found in connection with the violation).

---

4. In his memorandum, plaintiff expresses his opinion that a civil penalty of $0 "in effect lessen[s] the amount of the punitive awards." Plaintiff also asserts that "[n]othing in [a civil penalty of $0] condemns the defendants' wrongdoing."

5. Plaintiff contends that no other evidence could have been introduced. Plaintiff has not, however, explained why evidence indicating the egregiousness of the violation or the effect of the violation would not assist the court in exercising its discretion in determining the appropriate civil penalty.

## II. *Conclusion*

By virtue of the foregoing analysis, the judgment shall be altered as follows. First, in paragraph 1, "a total of $1000 in actual damages" shall be replaced by "a total of $1500 in a civil penalty". Second, in paragraph 4, "Count VI" shall be changed to "Count IV." Third, paragraph 5a shall be changed to read "a total of $1500 in a civil penalty under Counts VIII and IX of plaintiff's Second Amended Complaint."

**IT IS THEREFORE BY THE COURT ORDERED** that Citizens's motion for judgment notwithstanding the verdict or, in the alternative, to alter or amend judgment, or for a new trial (Doc. # 174) is denied.

**IT IS FURTHER ORDERED** that Mr. Said's and SAS's motion for judgment notwithstanding the jury verdict, or, in the alternative for a new trial, or to alter or amend the judgment (Doc. # 176) is denied.

**IT IS FURTHER ORDERED** that plaintiff's motion for new trial on his claims against defendant Citizens under federal odometer law and for fraudulent misrepresentation, and to alter or amend the judgment with respect to K.C.P.A. and Kansas odometer civil penalties, and to alter or amend the judgment with respect to an apparent clerical error (Doc. # 178) is granted in part and denied in part.

**IT IS SO ORDERED.**