(96 P.3d 667)
No. 90,527

DENNIS and LYNN DODSON, *Appellees,* v. U-NEEDA SELF STORAGE, LLC, *Appellant.*

—

Opinion filed August 27, 2004.

*Tim J. Moore*, of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, for appellant.

*Christopher J. Vinduska*, of Klenda, Mitchell, Austerman & Zuercher, L.L.C., of Wichita, for appellees.

Before JOHNSON, P.J., MALONE and HILL, JJ.

HILL, J. : This case requires us to decide if a deceptive act and an unconscionable act were committed by the owner of a self-storage facility while renting a storage unit. Because the consumers were told by the owner that they would have sole access to the unit and the owner had reason to know it could not give such exclusive possession to the consumers, the owner did commit a deceptive act according to the Kansas Consumer Protection Act. Furthermore, because of the deception, the consumers were thus unable to receive a material benefit from their transaction and we must hold that an unconscionable act was also committed. The trial court was correct, and we affirm.

U-Needa Self Storage, LLC, appeals the district court's judgment in favor of Dennis and Lynn Dodson on their claims of deceptive acts and unconscionable acts in violation of the Kansas Consumer Protection Act found in K.S.A. 2003 Supp. 50-626 and K.S.A. 2003 Supp. 50-627. The Dodsons cross-appeal the district court's assessment of a civil penalty totaling $2,000 against U-Needa and denial of their request for attorney fees. Therefore, we first examine the claimed deceptive act, then the unconscionable act, and then, finally, we look at the penalties assessed by the trial court.

The facts surrounding the transaction are pertinent. On September 20, 2001, Lynn and Dennis Dodson went to U-Needa with their personal property, intending to rent a storage unit. They had some items already stored in unit #847, which was rented by Lynn's sister, Justine Brown, but they intended to move all of their property into their own unit.

Lynn went into the U-Needa office alone and spoke with the manager, Larry Thompson, about moving their property from Brown's unit into another unit. Thompson told her that in order to get their property out of Brown's unit, they would have to pay the amount due on the account. When Lynn said that she and her husband wanted their own unit and did not want anyone else to have access, Thompson told her they could rent Brown's unit if they paid the amount due. He said that no one else would be allowed access and offered to change the pass code on the unit. Thompson testified that he also told Lynn that in order to transfer tenancy, Brown had to approve the transfer in writing.

Thompson requested information from Lynn and instructed her to fill out part of a document titled "Rental Agreement," which listed the unit number as 847. Lynn indicated on the document that only she and her husband were entitled to access to the unit. Thompson also filled out part of the document, which both parties signed. Thompson told Lynn rent was $80 per month, but she initially had to pay $97 for rent plus late fees already accrued on the account. Thompson changed the pass code on unit #847 and gave Lynn a card stating the unit number and the new pass code. Lynn then gave Thompson $50 of the $97 owed. Dennis, who had entered the office toward the end of the discussion, bought a lock for the unit from Thompson.

Thompson and the Dodsons went through the security gate to unit #847, where Thompson removed the lock. After unloading their personal property into the unit, they secured it using the new lock purchased from Thompson. The next day, Lynn, through her brother, paid another $50 and received a receipt showing rent was current on unit #847 until October 10, 2001.

However, on September 24, 2001, Justine Brown went to U-Needa, intending to enter unit #847. When her access code did

not open the security gate, she went to the office and discussed the matter with Thompson. He told her that he did not know why her access code was not working. After looking on the computer, Thompson told her to try again. Brown did so, and the security gate opened.

Thompson met Brown at unit #847. When her key would not open the lock, Thompson told her that he did not know how or why the lock had been changed. With Brown's approval, Thompson cut the lock and waived the fee for doing so. At Brown's request, Thompson changed the access code to a different number.

Three days later, the Dodsons went to U-Needa to remove their property from the unit. When they were unable to open the security gate using the access code provided by Thompson, they went to the office to inquire. Thompson refused to allow them access, saying that unit #847 belonged to Brown. When Lynn told Thompson that they had signed a rental contract and she had paid for the unit, Thompson denied such a contract existed and told them to get off of the property.

After a bench trial, the district court found U-Needa had committed a deceptive act in violation of K.S.A. 2003 Supp. 50-626 and an unconscionable act in violation of K.S.A. 2003 Supp. 50-627. The court imposed a civil penalty of $1,000 per act, for a total judgment of $2,000 against U-Needa for the Dodsons. The court denied the Dodsons' requests for attorney fees.

*DECEPTIVE ACT*

The issue of whether a deceptive act or practice, within the meaning of the KCPA, has occurred is a question of fact. *Queen v. Lynch Jewelers, LLC,* 30 Kan. App. 2d 1026, 1038, 55 P.3d 914 (2002). The function of an appellate court is to determine whether the district court's findings of fact are supported by substantial competent evidence and whether the findings are sufficient to support the district court's conclusions of law. Substantial evidence is such legal and relevant evidence as a reasonable person might accept as sufficient to support a conclusion. See *Unrau v. Kidron Bethel Retirement Services, Inc.,* 271 Kan. 743, 747, 27 P.3d 1 (2001). The appellate court does not weigh conflicting evidence,

pass on credibility, or redetermine questions of fact. *State ex rel. Stovall v. Meneley*, 271 Kan. 355, 387, 22 P.3d 124 (2001).

The statutory definition of a deceptive act is:

"(b) Deceptive acts and practices include, but are not limited to, the following, each of which is hereby declared to be a violation of this act, *whether or not any consumer has in fact been misled*:

"(1) Representations made *knowingly or with reason to know that*:

(A) Property or services have sponsorship, approval, accessories, *characteristics*, ingredients, *uses, benefits* or quantities *that they do not have.*" (Emphasis added.) K.S.A. 2003 Supp. 50-626.

The trial court found that U-Needa committed a deceptive act by representing to the Dodsons that they would have sole access to unit #847 when U-Needa had reason to know it could not give such rights to the Dodsons. This court must decide whether there is legal and relevant evidence that a reasonable person might accept as sufficient to support the district court's conclusion. See *Unrau*, 271 Kan. at 747.

Before its dealings with the Dodsons, U-Needa entered into a rental agreement under which Brown rented unit #847, and only Brown, her brother, and their mother were entitled to access. Lynn Dodson testified that thereafter, Thompson said that the Dodsons could rent unit #847 if they paid the amount due on the account and that no one else would be allowed access to the unit. Lynn and Thompson partially filled out and signed a "Rental Agreement," which listed the unit number as 847. Lynn indicated on the document that only she and her husband were entitled to access to the unit. Lynn testified that after discussing rent, Thompson changed the pass code on unit #847 and gave Lynn a card stating the unit number and the new pass code. Lynn then gave Thompson $50 of the $97 owed. Thompson removed the lock from unit #847 and allowed the Dodsons to secure it with a new lock, which they bought from him. After receiving the remaining balance the next day, Thompson provided Lynn's brother with a receipt in the Dodsons' names. Clearly, U-Needa represented to the Dodsons that they had sole access to unit #847, knowing or with reason to know that Brown was entitled to access to unit #847 in accordance with her rental agreement. There is substantial competent evidence

supporting the district court's finding that U-Needa committed a deceptive act.

U-Needa urges this court to reverse the decision of the district court for two reasons. First, U-Needa argues a contract was not formed between itself and the Dodsons because Brown never approved the assignment, the contract lacked essential terms, and there was no meeting of the minds. U-Needa's argument is irrelevant because the Dodsons claim a violation of K.S.A. 2003 Supp. 50-626, not a breach of contract. Second, U-Needa argues the district court improperly focused on the receipt in the Dodsons' names that Thompson gave to Lynn's brother. U-Needa is essentially asking this court to weigh conflicting evidence and pass on witnesses' credibility, which we cannot do. See *Meneley*, 271 Kan. at 387.

## UNCONSCIONABLE ACT

The issue of whether an act is unconscionable under the KCPA is a question of law subject to unlimited review. However, the determination of whether an act is unconscionable ultimately depends upon the facts of the case. Therefore, to a great extent, the determination is left to the sound discretion of the district court, to be determined based on the particular circumstances of each case. *State ex rel. Stovall v. DVM Enterprises, Inc.*, 275 Kan. 243, 249, 62 P.3d 653 (2003).

The KCPA prohibits sellers from engaging in unconscionable acts or practices. "No supplier shall engage in any unconscionable act or practice in connection with a consumer transaction. An unconscionable act or practice violates this act whether it occurs before, during or after the transaction." K.S.A. 2003 Supp. 50-627(a). While the KCPA has no definition of what is unconscionable, it does give examples of unconscionable acts, which include a situation in which "the consumer was unable to receive a material benefit from the subject of the transaction." K.S.A. 2003 Supp. 50-627(b)(3).

The facts of this case fit squarely within a statutory example of an unconscionable act, *i.e.,* "the consumer was unable to receive a material benefit from the subject of the transaction." Lynn testified

that Thompson said the Dodsons would have exclusive access to unit #847, and based on this information, they paid rent plus late fees accrued on the account and moved their property into the unit. Just 7 days later, U-Needa denied the Dodsons access to the unit and their property. The Dodsons were unable to receive a material benefit from their transaction with U-Needa.

Furthermore, this case involves an element of deceptive bargaining as well as unequal bargaining power. Lynn testified that Thompson said the Dodsons would have exclusive access to unit #847, and Thompson knew Brown was entitled to access to unit #847 according to her rental agreement. Even if Thompson told Lynn the transfer was not effective until Brown's approval was obtained, as he claimed, Thompson signed the rental agreement, accepted the Dodsons' money, gave Lynn a new access code, removed Brown's lock from the unit, allowed the Dodsons to put their lock on the unit, and gave the Dodsons a receipt in their names. Thompson's actions were clearly deceptive.

Also, the case involves an element of unequal bargaining power. U-Needa used a standard boilerplate contract that it obtained from a Texas self-storage association, a factor that should be considered in determining whether an act was unconscionable. See *DVM Enterprises, Inc.*, 275 Kan. at 251. Moreover, Lynn testified that she told Thompson she had never signed a contract before, and he told her how to fill out the form. U-Needa knew or had reason to know only Brown, her brother, and her mother were entitled to access to unit #847 according to her rental agreement and that Brown's approval was required for any transfer of tenancy. Lynn, on the other hand, testified that after signing the contract and paying the fees, she thought no further action was necessary to transfer the tenancy. Furthermore, when Lynn signed the contract, the Dodsons had over $7,000 worth of personal property in their vehicles and did not have a home; as such, they were greatly in need of a storage unit at that time. Clearly, there was an element of unequal bargaining power.

U-Needa engaged in deceptive bargaining conduct, took advantage of unequal bargaining power, and denied the Dodsons a material benefit of the consumer transaction. Consequently, the dis-

trict court did not err in concluding U-Needa committed an unconscionable act in violation of K.S.A. 2003 Supp. 50-627.

## CROSS-APPEAL OVER PENALTY

The Dodsons argue the district court abused its discretion in imposing a penalty against U-Needa of only $1,000 for each violation of the KCPA and in denying their request for attorney fees. We review the trial court's decision to impose a civil penalty under the KCPA, as well as its refusal to award attorney fees, using an abuse of discretion standard. *Ray v. Ponca/Universal Holdings, Inc.*, 22 Kan. App. 2d 47, 51, 913 P.2d 209 (1995). "Judicial discretion is abused only when no reasonable person would take the view adopted by the trial court. [Citations omitted.]" *Varney Business Services, Inc. v. Pottroff*, 275 Kan. 20, 44, 59 P.3d 1003 (2002).

For each violation of the KCPA, the district court may impose a civil penalty, rendering the violator liable to the aggrieved consumer. K.S.A. 2003 Supp. 50-636(a). The legislature's intent in allowing the district court to impose civil penalties for violations of the KCPA was "to encourage enforcement of the act by a consumer acting as his own 'private attorney general.' " K.S.A. 50-636, Kansas Comment, 1973.

The Dodsons argue that in awarding a civil penalty of only $2,000, the district court failed to comply with the intent of the legislature. They note that the district court found U-Needa violated the KCPA based on Thompson's actions between September 20 and September 24. They claim that any remedial measures they could have taken, such as contacting Brown, would have necessarily occurred after September 24. They argue their first opportunity to mitigate damages did not occur until at least September 27, when they learned Thompson had changed their access code. They claim that at this point, the violations had already occurred and their losses were unavoidable.

The Dodsons' argument has no merit. In *Equitable Life Leasing Corp. v. Abbick*, 243 Kan. 513, 757 P.2d 304 (1988), the Kansas Supreme Court discussed the legislature's intent, stating: "[K.S.A. 50-636] is remedial rather than punitive. Its purpose is to encourage aggrieved consumers with small claims to file suit." 243 Kan.

at 517. In this case, U-Needa deprived the Dodsons of possession of their personal property. In order to retrieve their property, they had two remedial options: (1) contact Brown, who could have allowed them access to the unit, or (2) file suit. The Dodsons could have easily sought and achieved a remedy by simply contacting Brown. Their problem might have been remedied without resorting to filing claims under the KCPA. The district court did not abuse its discretion in imposing a penalty of only $2,000 against U-Needa.

The Dodsons also argue the district court abused its discretion in denying their request for attorney fees. Under K.S.A. 50-634(e), "the court *may* award to the prevailing party reasonable attorney fees" if, *inter alia,* a supplier is found to have violated the act through judgment. (Emphasis added.) As discussed above, the Dodsons could have sought and achieved a remedy without resorting to the courts. Furthermore, the district court granted partial summary judgment in favor of U-Needa; therefore, U-Needa "prevailed" on all of the Dodsons' claims with the exception of their claims under the KCPA. We find the trial court's treatment of the Dodsons' request for attorney fees reasonable and not an abuse of discretion.

Affirmed.