IN THE
# ARIZONA COURT OF APPEALS
DIVISION TWO

SEAN BONNETTE,
*Plaintiff/Appellant*,

*v.*

MG FINANCIAL ENTERPRISES, LLC;
A & G CAR SALES, LLC; AND
KAREN G. ARAKELOV, AN INDIVIDUAL,
*Defendants/Appellees.*

No. 2 CA-CV 2022-0158
Filed November 30, 2023

Appeal from the Superior Court in Pima County
No. C20191014
The Honorable Casey F. McGinley, Judge

**AFFIRMED IN PART;
VACATED IN PART AND REMANDED**

COUNSEL

A. Ferraris Law P.L.L.C., Tucson
By Christine Anderson Ferraris

and

Choi & Fabian PLC, Chandler
By Veronika Fabian
*Counsel for Plaintiff/Appellant*

Law Offices of Lawrence Y. Gee PLLC, Tucson
By Lawrence Y. Gee
*Counsel for Defendants/Appellees*

---

**OPINION**

Judge Sklar authored the opinion of the Court, in which Vice Chief Judge
Staring and Judge O'Neil concurred.

---

S K L A R, Judge:

**¶1**        This case concerns the relationship between Arizona's Lemon
Law and the federal Magnuson-Moss Warranty Act.  The Lemon Law
defines the scope of the implied warranty of merchantability in used-car
sales.  *See* A.R.S. § 44-1267.  Magnuson-Moss authorizes courts to award
attorney fees to consumers who succeed on certain state-law implied
warranty claims.  15 U.S.C. § 2310(d).  In this case, Sean Bonnette proved a
Lemon Law claim against the seller of a used vehicle.  We conclude that his
successful claim rendered him eligible for a discretionary attorney-fee
award under Magnuson-Moss.  Because the trial court reached a contrary
conclusion, we remand so it can exercise its discretion on whether to award
fees and if so, the amount of a reasonable fee award.  We also reject
Bonnette's argument that the trial court improperly struck an award of
punitive damages.

## FACTUAL BACKGROUND

**¶2**        "We view the facts in the light most favorable to sustaining
the trial court's judgment."  *Flying Diamond Airpark, LLC v. Meienberg*, 215
Ariz. 44, ¶ 2 (App. 2007) (quoting *Cimarron Foothills Cmty. Ass'n v. Kippen*,
206 Ariz. 455, ¶ 2 (App. 2003)).  In March 2018, Bonnette purchased a used
2011 Kia Sedona minivan from A & G Car Sales, LLC.  The vehicle had been
titled to MG Financial Enterprises, LLC.  Karen Arakelov is a
member-manager of both A & G and MG Financial.  We collectively refer
to A & G, MG Financial, and Arakelov as "Dealer."

**¶3**        Shortly after the purchase, the minivan underwent a "violent
kickback" when placed in reverse.  Bonnette complained to Arakelov, who
told him the minivan was "sensitive."  Bonnette requested a refund but was
denied.  A & G attempted to repair the transmission control module, but
the problem remained.  After A & G inspected the minivan again, Arakelov
told Bonnette that the transmission control module was still not working

properly and that the motor mounts were bad. He also told Bonnette that A & G would not make further repairs.

¶4            Bonnette filed this lawsuit, asserting numerous claims, including for consumer fraud and breach of implied warranty. After a five-day trial, the jury awarded Bonnette no actual damages on the consumer-fraud claim, but it did award $12,500 in punitive damages. It also found for Bonnette on one of his two implied-warranty theories. The trial court later found Bonnette was not eligible for attorney fees under Magnuson-Moss. It also struck the punitive damages award. This timely appeal followed.

## MAGNUSON-MOSS ATTORNEY FEES

¶5            We first address the trial court's conclusion that Bonnette is ineligible for attorney fees under Magnuson-Moss. Whether a party is eligible for an award of fees under a statute is a question of law we review de novo. *See Dooley v. O'Brien*, 226 Ariz. 149, ¶ 9 (App. 2010).

## I.      Procedural background: the jury renders a verdict for Bonnette on the Lemon Law claim

¶6            In his complaint, Bonnette alleged that Dealer breached the implied warranty of merchantability under the Arizona Motor Vehicles Warranties Act ("Lemon Law") and Arizona's Uniform Commercial Code ("UCC"). He also alleged that Dealer had breached "state implied warranty laws under the Magnuson Moss Warranty Act." He sought attorney fees under Magnuson-Moss.

¶7            At trial, the jury was provided with two sets of verdict forms. One set appeared to correspond to the Lemon Law and the other to the UCC. The trial court and parties agreed that the two statutes provided alternative implied-warranty theories. The jury found in Bonnette's favor on the Lemon Law theory only. Its verdict allowed Bonnette to elect the remedy of either: (1) $1,406.82 in repair costs; or (2) voiding the purchase contract and receiving $982.81 in "[i]ncidental and consequential damages." The jury found in Dealer's favor on the UCC theory.

¶8            Having prevailed on the Lemon Law theory, Bonnette applied for nearly $160,000 in attorney fees under Magnuson-Moss. The trial court denied his application. It concluded that Bonnette was ineligible for fees because he had not prevailed on the UCC theory. Moreover, although the jury had rendered a verdict for Bonnette on the Lemon Law

theory, the court found that this did not "automatically represent[] a violation of Magnuson-Moss." Bonnette challenges these conclusions.

## II.    Lemon Law and the implied warranty of merchantability

¶9        Arizona's Lemon Law imposes substantive and procedural requirements on vehicle warranties. A.R.S. §§ 44-1261 to 44-1267. It contains separate requirements for new and used vehicles. This case concerns the latter. The used-vehicle requirements are derived from the UCC's implied warranty of merchantability. We start our analysis there.

¶10        The UCC implied warranty is imposed by A.R.S. § 47-2314. The warranty "is implied in a contract for [the sale of goods] if the seller is a merchant with respect to goods of that kind." § 47-2314(A). To "be merchantable" and thus satisfy the warranty, a good "must be at least such as" meeting six conditions. § 47-2314(B). Those conditions include "[p]ass[ing] without objection in the trade under the contract description," and being "fit for the ordinary purposes for which such goods are used." § 47-2314(B)(1), (3).

¶11        The Lemon Law provides that the implied warranty "is met" if the vehicle satisfies two conditions: (1) it must function in a safe condition as provided in A.R.S. §§ 28-921 to 28-966; and (2) it must be substantially free of any defect that significantly limits its use for ordinary transportation purposes on public highways. § 44-1267(C). In essence, this requirement distills the six conditions of Section 47-2314(B)'s implied warranty and adopts them to the sale of used cars.

¶12        The Lemon Law also limits a seller's ability to disclaim that warranty until the earlier of fifteen days or five hundred miles after the sale. § 44-1267(B); *see also* § 44-1267(I) (allowing purchaser to waive implied warranty in limited circumstances). In addition, it requires that if the implied warranty is breached, "the purchaser [must] give reasonable notice to the seller" and an opportunity to repair. § 44-1267(E). Should the repair be unsuccessful, the purchaser may pursue its UCC remedies. § 44-1267(E), (K). These remedies include cancellation of the contract and consequential damages. A.R.S. §§ 47-2711, 2715. However, a seller's liability "is limited to the purchase price paid for the used motor vehicle." § 44-1267(F). We refer to a purchaser's pursuit of these remedies as a Lemon Law claim.

¶13        Notably, the Lemon Law is codified in title 44, chapter 9, article 5 of the Arizona Revised Statutes. A.R.S. §§ 44-1261 to 44-1267. Article 5 concerns motor vehicle warranties. Another section of that article

provides, "[i]f a consumer prevails in an action under this article, the court shall award the consumer reasonable costs and attorney fees." A.R.S. § 44-1265(B). However, Bonnette did not seek attorney fees under that statute, despite its applicability and mandatory nature. *See Moedt v. Gen. Motors Corp.*, 204 Ariz. 100, ¶ 17 (App. 2002) (providing that "court must award attorney's fees to a prevailing party in a Lemon Law action," subject to reasonableness analysis). We therefore consider attorney fees only under Magnuson-Moss.

## III. Applicability of Magnuson-Moss to Bonnette's Lemon Law claim

¶14 Magnuson-Moss "is a remedial statute designed 'to improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products.'" *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 222 (2nd Cir. 2017) (quoting 15 U.S.C. § 2302(a)). Magnuson-Moss "codif[ies] a consumer's rights under state law to bring warranty actions." *Chaurasia v. Gen. Motors Corp.*, 212 Ariz. 18, ¶ 26 (App. 2006). It "does not create additional bases for recovery under federal law." *Bynum v. Fam. Dollar Stores, Inc.*, 592 F. Supp. 3d 304, 315 (S.D.N.Y. 2022).

¶15 Specifically, Magnuson-Moss allows "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under . . . [an] implied warranty . . . [to] bring suit for damages and other legal and equitable relief." 15 U.S.C. § 2310(d)(1). An "implied warranty" under Magnuson-Moss is "an implied warranty arising under State law (as modified by sections 2308 and 2304(a) of this title) in connection with the sale by a supplier of a consumer product." 15 U.S.C. § 2301(7). When a consumer prevails on an implied-warranty claim, that consumer is eligible under Magnuson-Moss to recover reasonable attorney fees and costs, as long as the consumer provided a reasonable opportunity to cure the defect. 15 U.S.C. §§ 2310(d)(2), (e). However, the court retains "discretion [to] determine that such an award of attorneys' fees would be inappropriate." § 2310(d)(2).

### A. Whether a Lemon Law claim is an "implied warranty" claim under Magnuson-Moss

¶16 In addressing Bonnette's eligibility for Magnuson-Moss attorney fees, we must first determine whether Dealer breached an "implied warranty" as defined by Magnuson-Moss. On the surface, this issue is simple. Dealer does not and cannot dispute that Lemon Law claims require proving that the seller breached a state-law implied warranty.

Because the Lemon Law adapts the UCC's implied warranty of merchantability to the used-car context, a successful Lemon Law claim necessarily involves a breach of that warranty. *See Zylstra v. DRV, LLC*, 8 F.4th 597, 609 (7th Cir. 2021) (stating that because Magnuson-Moss violation "depends on the existence of an underlying viable state-law warranty claim . . . the [Magnuson-Moss and state] claims can be evaluated together and succeed or fail together"); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) ("[C]laims under the Magnuson-Moss Act stand or fall with . . . express and implied warranty claims under state law.").

¶17 But the parenthetical language in Magnuson-Moss's definition of "implied warranty" adds a layer to the analysis. Under that language, "sections 2308 and 2304(a) of this title" modify the general rule that an "implied warranty" under Magnuson-Moss is synonymous with a state-law implied warranty. § 2301(7). Section 2304(a) concerns federal standards for written warranties. Section 2308 provides, "No supplier may disclaim or modify . . . any implied warranty to a consumer with respect to such consumer product if . . . such supplier makes any written warranty to the consumer with respect to such consumer product" or enters into a "service contract." § 2308(a). It also provides that disclaimers, modifications, and limitations that violate that section are "ineffective for purposes of this chapter and State law." § 2308(c).

¶18 Neither Section 2304(a) nor Section 2308 expressly states how they modify Section 2301(7)'s definition of "implied warranty." In analyzing this issue, Dealer argues that we should adopt the view of *McNamara v. Nomeco Bldg. Specialties, Inc.*, 26 F. Supp. 2d 1168 (D. Minn. 1998). *McNamara* does not analyze Section 2304(a), nor does Dealer develop an argument that it applies. As for Section 2308, *McNamara* reads that provision as limiting the definition of "implied warranty" to cases in which the supplier provided a written warranty or service contract. *Id.* at 1174. At trial, Bonnette did not argue that Dealer had provided either of these items. Dealer therefore argues that Bonnette's claim did not involve an implied warranty for Magnuson-Moss purposes.

¶19 Dealer's argument finds some support in *McNamara*. But we are not persuaded that *McNamara* correctly reads Section 2308, which concerns a supplier's ability to modify, disclaim, and limit state-law implied warranties. Thus, unlike *McNamara*, we conclude that Section 2308 modifies Section 2301(7)'s definition of "implied warranty" only in the context of a supplier's attempt to modify, disclaim, or limit a state-law

implied warranty. Dealer does not argue that it made such an attempt, so Section 2308 does not support Dealer's argument.

**¶20** Other than *McNamara*, Dealer relies on *Rothe v. Maloney Cadillac, Inc.*, 518 N.E.2d 1028 (Ill. 1988). But that case does not support Dealer's argument either. It merely addresses the extent to which privity of contract is required in Magnuson-Moss claims. *Id.* at 1029-31.

**¶21** Thus, Bonnette succeeded on an implied-warranty claim as defined by Magnuson-Moss. He was eligible for attorney fees. It also follows that he was not required to prevail on the UCC verdict form to implicate Magnuson-Moss. In fact, we doubt the jury should have been provided the UCC verdict form, given that the Lemon Law merely adapts the UCC warranty to the used-car context. It does not impose a separate warranty that would justify giving both instructions.

### B. Whether Bonnette provided Dealer a reasonable opportunity to cure

**¶22** As noted, Magnuson-Moss also provides that a consumer is ineligible to recover attorney fees unless the consumer provided the defendant a reasonable opportunity to cure the defect. 15 U.S.C. § 2310(e). Dealer asserts that Bonnette failed to satisfy this requirement. We disagree. Like Magnuson-Moss, the Lemon Law requires that the seller be given a reasonable opportunity to repair or cure. § 2310(e); A.R.S. § 44-1267(e). The jury was properly instructed to this effect. In returning a verdict for Bonnette, the jury necessarily found that Bonnette had provided Dealer this opportunity.

## IV. Scope of issues to be addressed on remand

**¶23** Bonnette is eligible to seek an award of attorney fees under Magnuson-Moss. We must therefore remand to the trial court so it can exercise its discretion whether to award Bonnette all, some, or none of his request for nearly $160,000 in attorney fees. 15 U.S.C. § 2310(d)(2). *See In re Estate of Chalker*, 255 Ariz. 210, ¶ 22 (App. 2023) (where awarding attorney fees is discretionary, it is best left to trial court in first instance). In determining that remand is necessary, we reject Dealer's argument that the trial court has already exercised its discretion not to award fees. The record does not support this argument. Instead, the court focused on whether Bonnette's successful Lemon Law claim rendered him eligible for fees under Magnuson-Moss.

**¶24** We likewise reject the argument, raised by Dealer for the first time at oral argument, that we should remand for a new trial. Dealer did not cross-appeal or raise that argument in its briefs. It has therefore waived the argument. *See Mitchell v. Gamble*, 207 Ariz. 364, ¶ 16 (App. 2004) ("Generally, issues and arguments raised for the first time at oral argument on appeal are untimely and deemed waived."). Nor has Dealer cited a plausible basis for ordering a new trial, as the remand will resolve the attorney-fee issues.

## PUNITIVE DAMAGES

**¶25** We turn next to Bonnette's argument that the trial court improperly struck the $12,500 punitive damage award on the consumer-fraud claim because the jury awarded no actual damages. The consumer-fraud claim arose from Bonnette's allegation that Dealer improperly double charged him $198 for the minivan's registration. We review a punitive damage award de novo. *Arellano v. Primerica Life Ins. Co.*, 235 Ariz. 371, ¶ 34 (App. 2014).

**¶26** "Punitive damages exist for the limited purpose of punishing outrageous conduct to deter others from engaging in such conduct." *Swift Transp. Co. of Ariz. L.L.C. v. Carman*, 253 Ariz. 499, ¶ 7 (2022). Here, we need not address whether the record sufficiently reflected the level of "knowing culpability" and reprehensibility that would support giving a punitive damages instruction. *See id*. at ¶ 21. This is because an award of actual or compensatory damages is a prerequisite to an award of punitive damages. *Bridgestone/Firestone N. Am. Tire, L.L.C. v. Naranjo*, 206 Ariz. 447, ¶ 29 (App. 2003). The jury did not award Bonnette actual damages on the consumer-fraud claim.

**¶27** However, Bonnette argues that the jury must have intended to do so, because it found in Bonnette's favor on the consumer-fraud claim, and damages are an element of that claim. He suggests that the jury found actual damages of $198 for consumer fraud but included that amount in the Lemon Law verdict. He presents a calculation that in his view, supports that conclusion. In essence, he argues that we should transfer those $198 to the consumer-fraud verdict.

**¶28** We will not. While we acknowledge the tension in the jury's findings set forth in the consumer-fraud verdict forms, Bonnette's reading is not the most plausible. The consumer-fraud claim and the Lemon Law claim had different elements. Unlike the Lemon Law claim, which involved breach of the implied warranty, the consumer-fraud claim required

Bonnette to prove that he sustained damages from Dealer's deceptive practices. *See Kuehn v. Stanley*, 208 Ariz. 124, ¶ 16 (App. 2004) ("To succeed on a claim of consumer fraud, a plaintiff must show a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and consequent and proximate injury resulting from the promise.").

**¶29** In concluding that Bonnette's actual damages were zero, the jury necessarily concluded that Bonnette had not proven damages. The trial court had no authority to set aside this finding. *See State v. Burton*, 20 Ariz. App. 491, 496 (1973) ("The court cannot grant an additur when the jury finds that the plaintiff was not damaged."); *see also* Restatement (Second) of Torts § 908 cmt. c (1979) ("It is essential, however, that facts be established that, apart from punitive damages, are sufficient to maintain a cause of action.").

**¶30** In arguing to the contrary, Bonnette relies on the Kansas case of *Equitable Life Leasing Corp. v. Abbick*, 243 Kan. 513 (1988). But *Abbick* reinforces why we cannot read the jury's verdict as he argues. In that case, the jury awarded actual damages on a contract claim. *Id.* at 514. It also awarded punitive damages but no actual damages on a fraud claim. *Id.* at 515. The Kansas Supreme Court held that the trial court properly allowed punitive damages because "[t]he breach of contract was . . . grounded upon fraudulent inducement" and "[a]n award of actual damages on the fraud claim would have been duplicative and was properly not submitted to the jury." *Id.* at 516.

**¶31** Here, by contrast, the consumer-fraud and Lemon Law claims arise from different factual allegations. The former alleged facts concerning the purchase of the vehicle, while the latter involved facts concerning breach of the implied warranty. Neither claim was grounded on the other. We cannot necessarily infer from the jury's finding and award on the Lemon Law claim that the same damages also applied to the consumer-fraud claim. For instance, had Dealer adequately repaired the minivan, Bonnette could not have succeeded on a Lemon Law claim. But that would not have affected the merits of the consumer-fraud claim. Hence, we find Bonnette's citation to *Abbick* unpersuasive. For the same reason, we reject Bonnette's argument that the jury intended to include consumer-fraud damages in its Lemon Law verdict. Instead, we conclude that because the jury awarded no damages for consumer fraud, the trial court properly struck its award of punitive damages.

**ATTORNEY FEES AND COSTS ON APPEAL**

¶32       Under Magnuson-Moss, Bonnette requests an award of attorney fees and costs expended on appeal.  Although Bonnette is eligible for attorney fees, in exercising our discretion under Magnuson-Moss, we deny his request to recover them.  As the prevailing party on appeal, however, Bonnette is entitled to his appellate costs upon compliance with Arizona Rule of Civil Appellate Procedure 21(b).  *See* A.R.S. § 12-341.  We express no opinion about how the trial court should exercise its discretion concerning Bonnette's request for fees incurred in that court.

**DISPOSITION**

¶33       For the foregoing reasons, we:  (1) vacate the trial court's denial of attorney fees and costs; (2) remand for the trial court to exercise its discretion under Magnuson-Moss as to whether to award attorney fees and costs incurred in that court; and (3) affirm the order striking punitive damages.